480 S.E.2d 77

STATE of South Carolina, Petitioner,

v.

Everett N. HOUGH, Respondent.

No. 24548.

Supreme Court of South Carolina.

Heard Oct. 17, 1996.

Decided Jan. 13, 1997.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Deputy Attorney General Salley W. Elliott, Columbia, and Solicitor C. Gordon McBride, Hartsville, for petitioner.

Dorothy Jean Killian, of Lancaster, for respondent.

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Hough*, 319 S.C. 104, 459 S.E.2d 863 (Ct.App.1995). We affirm in result.

## FACTS

Hough and a co-defendant, James Pierce Jr., were indicted for third degree burglary and grand larceny. The charges stemmed from the burglary of a Chesterfield County warehouse in which two power saws and two flashlights were stolen. The State's theory of the case was that Pierce and Hough had a drug problem and had committed the burglary to obtain money to purchase crack cocaine.

In his opening statement, the solicitor advised the jury that Pierce and Hough had a crack cocaine problem. Hough objected and moved for a mistrial; the State contended the cocaine use was relevant to show motive, intent, plan or scheme, which it intended to fully develop at trial. The trial court overruled the objection, pending development of the State's case.

Thereafter, Pierce testified for the State.[1] He testified that he and Hough had, on unspecified occasions in the past, drank beer and "gone out and stolen to buy rocks of crack cocaine." He provided no details of the prior crimes, nor did he specifi-

---

1. Pierce had pled guilty in exchange for a nine year sentence.

cally testify that he and Hough had previously committed burglaries, as opposed to stealing, to obtain money for crack.

Later, Pierce testified that on the night of the robbery in question, Hough went into the warehouse and came out with a chain saw, a circular saw, and two flashlights. Pierce took the saws and sold them to get money for more crack. The next morning the two of them used the money from the sale of the saws to purchase a rock of crack cocaine.

The jury convicted Hough of both grand larceny and burglary.

On appeal to the Court of Appeals, the State contended the evidence of cocaine use was admissible as *Lyle*[2] evidence to demonstrate Hough's motive, and as part of the *res gestae*. The Court of Appeals held that the evidence of Hough's crack cocaine use did not fit within any of the *Lyle* exceptions and that it was not essential to a full presentation of the State's case such that it was not part of the *res gestae*. Because we find portions of Pierce's testimony and the solicitor's opening statement were improperly admitted, we affirm in result.[3]

## ISSUES

1. Was the evidence of cocaine properly admitted as part of the *res gestae?*

2. Was the evidence of cocaine properly admitted under *Lyle* ?

3. Was error in admission of the prior bad acts harmless?

## 1.  *RES GESTAE*

Subsequent to publication of the Court of Appeals' opinion

---

2.  *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

3.  Our discussion concerns three separate incidents at trial: 1) Pierce's testimony concerning **prior** instances of stealing to obtain money for crack, 2) Pierce's testimony that he and Hough purchased crack cocaine with money obtained from the sale of the stolen saws, and 3) the solicitor's opening statement that Hough and Pierce "had a crack problem." The only testimony which was properly admitted concerned the purchase of crack with money derived from the sale of the saws stolen from the warehouse.

in this case, this Court decided *State v. Adams*[4] and *State v. Williams.*[5]

In *Adams*, we set forth an analysis to determine whether evidence is properly admitted as part of the *res gestae* of a crime:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ... [and is thus] part of the res gestae of the crime charged. And where evidence is admissible to provide this full presentation of the offense, [t]here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae.

470 S.E.2d at 370–371 (citing *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980)).

*Adams* involved the armed robbery and murder of the manager of a small grocery store. We upheld admission of evidence concerning the defendant's use of cocaine in the hours before the robbery under the theory of *res gestae.*[6] We specifically noted that evidence of prior drug use has been found inadmissible as part of the *res gestae*, "**where the record does not support any relationship between the crime and the drug use.**" 470 S.E.2d at 369 (citing *State v. Bolden*, 303 S.C. 41, 398 S.E.2d 494 (1990) (emphasis in original). There, however, we found the prior drug use so inextricably intertwined with the robbery and murder that it

---

4. 322 S.C. 114, 470 S.E.2d 366 (1996).

5. 321 S.C. 455, 469 S.E.2d 49 (1996).

6. We also found the defendant's robbery of a Circle K convenience store one half hour prior to the robbery of Johnny's admissible under *Lyle* to demonstrate Adams' intent to commit armed robbery.

was properly admitted as part of the *res gestae*. Further, the temporal proximity of the cocaine use to the robbery was so much a part of the environment of the crime that its omission would have unnecessarily fragmentized the State's case.

*Williams* involved a murder which occurred on an isolated road at 10:00 P.M. Victim had purchased crack from Williams at approximately 7:00 P.M. When Victim wanted more crack at 10:00 P.M., he went to find Williams, and spotted him driving down the isolated road. Victim managed to stop Williams, and went and discussed buying more crack. Victim apparently decided against buying more crack; however, the evidence adduced at trial implied that Victim may have "ripped off" some of Williams' rocks of crack. When Victim left the scene, Williams followed Victim and his passenger and fired a gun into their vehicle. Victim was killed. This Court found the crack transactions so clearly linked to the shooting as to be admissible as part of the *res gestae*. Without the evidence concerning the earlier cocaine transaction, as well as the transaction immediately prior to the shooting, "the State would have been precluded from explaining the circumstances of the crime." 469 S.E.2d at 53.

We find *Adams* and *Williams* are dispositive.

We emphasize that our analysis involves three separate incidents at trial, to wit: 1) Pierce's testimony concerning prior instances of stealing to obtain crack money, 2) Pierce's testimony concerning the sale of the saws and purchase of crack cocaine from the incident in question, and 3) the solicitor's opening statement that Hough and Pierce "had a crack problem."

We agree with the Court of Appeals' conclusion that Pierce's testimony concerning prior cocaine use did not form a part of the *res gestae*. Pierce testified he and Hough had, at unspecified times in the past, smoked rocks of cocaine together, and had previously stolen to obtain money for crack. There is, however, absolutely no evidence that the two had smoked any crack immediately prior to the burglary, or that the prior acts were "so linked together in point of time and circumstances" as to be required to a full presentation of the State's case. Accordingly, Pierce's testimony concerning the prior acts was inadmissible as part of the *res gestae*. *Accord*

*State v. Smith*, 309 S.C. 442, 424 S.E.2d 496 (1992); *State v. Bolden*, 303 S.C. 41, 398 S.E.2d 494 (1990) (defendants' prior use of cocaine not logically related to crime for which she/he was on trial). We affirm the Court of Appeals' ruling as to this portion of the testimony.

However, we find Pierce's testimony that he and Hough purchased crack with money from the stolen saws was properly admitted. The evidence that Pierce sold the saws and he and Hough bought crack with the money the next day was clearly relevant to furnish the context of the crime and was necessary to a full presentation of the State's case. Accordingly, as this testimony was within the *res gestae*, the Court of Appeals erred in finding this portion of the evidence inadmissible. Although we find this portion of Pierce's testimony admissible, it is insufficient to justify the solicitor's opening statement that the two had a crack cocaine problem. The fact that on this occasion Pierce and Hough bought one rock of crack cocaine with money used from the sale of the saws is simply insufficient to draw an inference that the two "had a crack problem." *See State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996) (solicitor's comments must be confined to the facts presented and the reasonable inferences therefrom). Accordingly, we concur with the Court of Appeals that the trial court erred in permitting this statement.

## 2. *LYLE* ISSUE

The Court of Appeals also held Pierce's testimony concerning prior cocaine use and purchase of crack the following day was inadmissible under *State v. Lyle, supra.*

As with the *res gestae* issue, we find the subsequent purchase of crack with the money from the stolen saws was properly admitted under *Lyle* as evidence of motive. However, we agree with the Court of Appeals that Pierce's testimony concerning the prior cocaine use and thefts did not meet the requirements to be admitted under *Lyle.*

Evidence of other crimes or bad acts is generally inadmissible to prove the bad character of the defendant or that he acted in conformity therewith. Such evidence is admissible, however, when it tends to establish motive, intent,

absence of mistake or accident, a common scheme or plan or identity. *State v. Lyle,* 125 S.C. at 416, 118 S.E. at 807. In the case of the common scheme or plan exception there must be a close degree of similarity or connection between the other crimes/bad acts and the crime charged which enhances the probative value of the evidence so as to outweigh its prejudicial effect. *State v. Jenkins,* 322 S.C. 414, 472 S.E.2d 251 (1996); *State v. Parker,* 315 S.C. 230, 433 S.E.2d 831 (1993). The common scheme or plan concerns more than the commission of two similar crimes; some connection between the crimes is necessary. *State v. Stokes,* 279 S.C. 191, 304 S.E.2d 814 (1983); *State v. Aiken,* 322 S.C. 177, 470 S.E.2d 404 (S.C.Ct.App.1996).

■ Here, as to Pierce's testimony concerning the prior cocaine use and thefts, there is simply no testimony demonstrating that a close degree of similarity between the earlier offenses and the current burglary. There was no testimony as to the types of items previously stolen, the method and manner of the previous thefts, the location of the thefts, or that the two had accomplished the thefts in a similar manner to the current warehouse burglary. Accordingly, the Court of Appeals correctly held this evidence insufficient to demonstrate a common scheme.

Further, this testimony was not relevant to demonstrate Hough's motive for the current burglary. The fact that Hough and Pierce had previously, on unspecified occasions, done crack cocaine or previously stolen to obtain money for crack does not demonstrate a motive for this robbery. On the contrary, the prior acts only serve to demonstrate that Hough acted in conformity with his propensity to commit crimes, which introduction of would be in direct contradiction of *Lyle.* *Cf. State v. Campbell,* 317 S.C. 449, 454 S.E.2d 899 (Ct.App. 1994) (by introducing evidence of defendant's prior cocaine sales, state was attempting to demonstrate that, because he had done so in the past, he was doing so on this occasion, precisely the type of inference *Lyle* prohibits).

■ As noted above, however, Pierce's testimony concerning the subsequent sale of the saws and purchase of crack cocaine was properly admitted. This testimony clearly pro-

vides a motive for Hough to have committed the crime and would therefore be admissible under *Lyle*. Accordingly, the Court of Appeals erred in holding this testimony inadmissible under *Lyle*. As with our analysis of the *res gestae* issue, however, the fact that this portion of Pierce's testimony was properly admitted does not provide a sufficient basis for the solicitor's broad statement that Pierce and Hough "had a crack problem." Accordingly, we find no basis under *Lyle* for admission of the solicitor's opening comment.

### 3. HARMLESS ERROR

The only remaining inquiry is whether, in light of our holding that Pierce's testimony regarding the subsequent purchase of cocaine was properly admitted, any error in admission of the solicitor's statement the two had "a crack problem" and Pierce's testimony the two had previously stolen to obtain money for crack was harmless error. We think not.

This case was essentially a swearing contest and it was Hough's word against Pierce's as to whether or not he was involved in the robbery. The fact that the jury heard improper testimony that the two had "a crack problem" and had previously stolen to obtain money for crack so permeated the trial that the jury likely used the improper testimony to infer that since Hough had done it before, he most probably did it again. Under these facts, we cannot say the error was harmless.

### CONCLUSION

In light of our holding, the decision of the Court of Appeals is

**AFFIRMED IN RESULT.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.