549 S.E.2d 258

**The STATE, Respondent,**

v.

**Franklin A. BENJAMIN, Appellant.**

**No. 25316.**

Supreme Court of South Carolina.

Heard Jan. 24, 2001.

Decided July 2, 2001.

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William E. Salter, III, all of Columbia, and Solicitor Walter M. Bailey, of Summerville, for respondent.

WALLER, Justice:

Benjamin was convicted of murder and armed robbery and respectively sentenced to life and thirty years. We affirm.

## FACTS

On May 7, 1997, Benjamin and a co-defendant, Tyrone Aiken, robbed the Sweetwater Citgo convenience store in Calhoun County. Aiken shot and killed the store's employee, Dale Walker, and the two stole approximately $100.00 from the register. Benjamin and Aiken then went, along with several accomplices who had waited in the car during the robbery, and bought alcohol and drugs with the stolen money. Several hours later, they robbed Dodger's Convenience store in Orangeburg County. Benjamin was arrested the following day and gave a statement to police in which he admitted his participation in the robberies but claimed Aiken had shot Walker. Benjamin was tried and convicted for the robbery and murder at Sweetwater Citgo.[1]

---

1. He was separately tried for the Dodger's robbery. His conviction and sentence were affirmed in *State v. Benjamin*, 341 S.C. 160, 533 S.E.2d 606 (Ct.App.2000).

## ISSUES

1. Was the trial court's jury instruction concerning duress misleading?

2. Was Benjamin's statement to police taken in violation of his right to remain silent?

3. Was evidence of the subsequent robbery of Dodger's store improperly admitted?

## 1. DURESS INSTRUCTION

■ At trial, Benjamin testified he only participated in the robbery because Aiken threatened to shoot him if he didn't. Accordingly, the trial court charged the jury on the defense of duress, as follows:

> And there's some talk about duress or coercion in this case. Let me tell you what coercion or duress is. Coercion means to excuse a criminal act coercion must be present, eminent, and of such a nature as to induce a reasonable apprehension of death or serious, serious bodily harm if the act is not done. There must be no reasonable way other than committing the crime to escape the threat of harm but I do charge you, Mr. Foreman, members of the jury, that under the law of South Carolina duress is not a defense to the charge of murder.[2] It could be a defense to the charge of robbery or armed robbery.

Defense counsel objected to the language that duress **could be** a defense to robbery, asserting duress is, in fact a defense. The trial court declined further instructions, finding the jury had understood the charge as given.

■ A jury instruction must be viewed in the context of the overall charge. *State v. Hughey,* 339 S.C. 439, 529 S.E.2d 721 (2000). The test for the sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean. *Id.*

■ Here, it is patent the judge's statement that duress "could be" a defense was simply an attempt to clarify for the

---

2. *See State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Robinson,* 294 S.C. 120, 363 S.E.2d 104 (1987)(holding duress is not a defense to murder).

jury that, although duress could not be a defense to murder, it could be a defense to robbery and armed robbery. We find reasonable jurors would have interpreted the charge this way, such that the trial court committed no error.[3]

## 2. STATEMENT TO POLICE

Benjamin next asserts his statement to SLED Agent Mears was taken in violation of his right to remain silent contrary to *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). We disagree.

At a *Jackson v. Denno*[4] hearing, Sheriff Jones testified that Benjamin was arrested at approximately 1:30 pm on May 8, 1997 and taken to the sheriff's office. According to Jones, when they got there, he asked Benjamin if "he wanted to talk with me," and Benjamin said "No." Jones did not question Benjamin anymore, nor did he advise Benjamin of his *Miranda*[5] rights. Jones testified Benjamin never requested an attorney.

Jones contacted SLED Agent Mears, who was investigating the case, and advised Mears to meet them at the sheriff's office. Mears arrived at the sheriff's office at approximately 2:30 pm and was advised that Sheriff Jones had not interviewed Benjamin. Benjamin then agreed to talk to Mears and was advised of his *Miranda* rights. Benjamin gave oral and written statements confessing to the crime. At no time, according to Mears, did Benjamin request counsel.

---

**3.** Although we find no error, the better practice is to refrain from the use of terms such as "could be" or "might be" a defense. We suggest the following instruction in cases in which the defense of duress is raised:

> To establish duress which will excuse a criminal act, the degree of coercion must be present, imminent, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. Coercion is no defense if there is any reasonable way, other than committing the crime, to escape the threat of harm. The fear of injury must be reasonable.

**4.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**5.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Benjamin asserts his statement was taken in violation of his right to remain silent because it was taken by Agent Mears after Benjamin had indicated he did not wish to talk to Sheriff Jones.

In *Michigan v. Mosley, supra,* the United States Supreme Court held that the fact that a suspect invokes his right to remain silent is not a permanent bar to police reinitiating contact with the suspect. The Court stated:

A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt "fully effective means ... to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored...." **The critical safeguard identified in the passage at issue is a person's "right to cut off questioning."** Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on **whether his "right to cut off questioning" was "scrupulously honored."**

423 U.S. at 102–104, 96 S.Ct. 321 (citations omitted, emphasis supplied).

Courts interpreting *Mosley* have set forth five factors to analyze to ascertain whether the defendant's right to cut off questioning was "scrupulously honored": (1) whether the suspect was given *Miranda* warnings at the first interrogation; (2) whether police immediately ceased the interrogation when the suspect indicated he did not want to answer questions; (3) whether police resumed questioning the suspect only after the passage of a significant period of time; (4) whether police provided a fresh set of *Miranda* warnings before the second interrogation; and (5) whether the second interrogation was restricted to a crime that had not been a subject of the earlier interrogation. *Burket v. Angelone,* 208 F.3d 172 (4th Cir.2000). *See also Roundtree v. Commonwealth,* 2000 WL 724026 (Va.

App.2000); *Wisconsin v. Badker,* 240 Wis.2d 460, 623 N.W.2d 142 (2000); *State v. Brooks,* 505 So.2d 714, 722 (La.), *cert. denied,* 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).

■ However, the *Mosley* factors are not exclusively controlling, nor do they establish a test which can be woodenly applied. *State v. Koput,* 134 Wis.2d 195, 396 N.W.2d 773, 776 (1986). Rather, the factors provide a framework for determining whether, under the circumstances, an accused's right to silence was scrupulously honored. *Id.*

"[A] second interrogation is not rendered unconstitutional simply because it involves the same subject matter discussed during the first interview." *Jackson v. Wyrick,* 730 F.2d 1177, 1180 (8th Cir.), *cert. denied,* 469 U.S. 849, 105 S.Ct. 167, 83 L.Ed.2d 102 (1984) (unless police wear down defendant by repeatedly questioning on same subject after invocation of rights, no violation of Miranda to reinterrogate); *United States v. Finch,* 557 F.2d 1234 (8th Cir.) (as long as new Miranda warnings are given and initial request to remain silent is scrupulously honored, statements from subsequent interrogations on same subject are admissible), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977); *Mills v. Commonwealth,* 996 S.W.2d 473 (Ky.1999), *cert. denied,* 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000) (no Miranda violation where defendant spoke with second officer, after invoking right to remain silent with first officer, though encounter with second officer came only about 20 minutes after invocation of right and involved same crime); *State v. Pierce,* 364 N.W.2d 801 (Minn.1985) (suspect reinterrogated 2 hours after initial attempt about same crime .... no undue pressure and defendant's right to cut off questioning was scrupulously honored); *People v. Foster,* 119 Ill.2d 69, 115 Ill.Dec. 557, 518 N.E.2d 82 (1987), *cert. denied,* 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988) (resumption of questioning 3 hours later about same crime); *State v. Isaac,* 465 So.2d 1384 (Fla.Dist.Ct.App.1985)(questioning resumed 1 hour, 40 minutes later about same crime). *See also United States v. Schwensow,* 151 F.3d 650, 659 (7th Cir.1998) (constitutionality of subsequent police interview depends not on its subject matter, but rather on whether the police in conducting the interview sought to undermine the suspect's resolve to remain

478

silent.), *cert. denied,* 525 U.S. 1059, 119 S.Ct. 626, 142 L.Ed.2d 565 (1998).

■ Here, under the totality of the circumstances, we find Benjamin's right to remain silent was "scrupulously honored," such that he had the "right to cut off questioning at any time." No *Miranda* warnings were given by Sheriff Jones because Benjamin indicated he did not wish to speak to him. Upon being told Benjamin didn't want to talk to him, Sheriff Jones immediately ceased talking to him. Further, there was no immediate resumption of questioning by police. At least one hour later,[6] Agent Mears arrived and read Benjamin his *Miranda* rights, having him initial after each sentence. Benjamin signed all the waivers, and gave both oral and handwritten confessions.

■ We concur with those courts, cited above, which hold that a subsequent interrogation concerning the same crime does not, in and of itself, violate an accused's right to remain silent. What is paramount is that police, under the totality of the circumstances, "scrupulously honor" the suspects's right to remain silent. We find, under the totality of the circumstances presented here, police fully complied with the mandates of *Michigan v. Mosley.* Accordingly, we find the trial court properly admitted Benjamin's statement.

### 3. EVIDENCE OF DODGER'S ROBBERY

Finally, Benjamin asserts the trial court improperly admitted evidence of the armed robbery of Dodger's Convenience Store which occurred several hours after the robbery/murder at Sweetwater Citgo. We disagree.

The robbery and murder at Sweetwater Citgo occurred between midnight and 1:00 am on May 7, 1997. Benjamin and his cohorts stole approximately $100.00 from the store and used the money to buy cocaine and marijuana. At approximately 4:30 am, they drove to Orangeburg where Aiken and Benjamin robbed Dodger's Convenience Store; however, they

---

6. The suspect in *Mosley* was approached by police approximately two hours after his initial invocation of his right to remain silent. Here, Agent Mears approached Benjamin approximately 1 hour and 15 minutes after Benjamin told Sheriff Jones he didn't wish to speak with him.

inadvertently stole the wrong part of the cash register and obtained no money. As they left the store with the register, Aiken dropped the gun which had been used in the Sweetwater Citgo robbery and murder. Aiken testified they robbed Dodger's in order to obtain money for more drugs.

At trial, the State presented the testimony of the Dodger's clerk, Cecily McMillan. She positively identified Benjamin, testifying that when she attempted to run from her assailants, Benjamin was screaming at her telling her to "get [your] ass back here before [I] have to come back and get [you]." She also testified Benjamin looked like he was "up pretty bad mood, like was angry about something."

■ Benjamin asserts the probative value of McMillan's testimony was outweighed by its prejudicial value. We disagree. We find McMillan's testimony was properly admitted for numerous reasons.[7]

■ First, Benjamin's defense to the charges here was that, although he participated in the crimes, he did so under duress, fearing Aiken would harm him if he did not go along. McMillan's testimony tended to demonstrate that Benjamin was a willing participant, thereby rebutting Benjamin's claim that he acted under duress.[8] Accordingly, this testimony was

---

7. The concurrence contends McMillan's testimony was admissible only insofar as it demonstrated identity. However, as Benjamin admitted his participation in the robberies, identity was not an issue in this case, and McMillan's testimony was not admissible for this purpose. *See State v. Carter*, 323 S.C. 465, 476 S.E.2d 916 (Ct.App.1996) (testimony of other bad acts not admissible to prove identity under *Lyle* where identity not in issue); *cf. State v. Langley*, 334 S.C. 643, 515 S.E.2d 98 (1999) (where victim's identity not an issue, evidence not admissible for that purpose); *State v. Livingston*, 327 S.C. 17, 488 S.E.2d 313 (1997) (same). Moreover, we fail to see that McMillan's description of the robbers as "one short and one tall" is sufficient to demonstrate identity.

8. The concurrence asserts evidence of Benjamin's conduct during the robbery of Dodger's is not relevant to his claim of duress during the earlier robbery of Sweetwater Citgo. We disagree. Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears. *State v. Schmidt*, 288 S.C. 301, 342 S.E.2d 401 (1986). All that is required is that the fact shown tends to make **more or less probable** some matter in issue and to bear directly or indirectly thereon. It is not required that the inference sought should necessarily follow from the fact proved. Evi-

properly admitted to demonstrate Benjamin's intent pursuant to *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). *See also State v. Beck*, 342 S.C. 129, 536 S.E.2d 679 (2000)(evidence of other bad acts is admissible when it tends to establish motive, identity, a common scheme or plan, the absence of mistake or accident, or intent).

■■■ Moreover, we find testimony concerning the subsequent robbery was admissible as part of the *res gestae*.

As noted by this Court in *Hough, supra:*

One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . [and is thus] part of the res gestae of the crime charged. And where evidence is admissible to provide this full presentation of the offense, [t]here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae.

325 S.C. at 92, 480 S.E.2d at 79.

■■■ Here, the weapon used, and left behind at the Dodger's store, was also the weapon used in the robbery/murder at Sweetwater Citgo such that testimony concerning the weapon was necessary to a full presentation of the State's case.[9]

___

dence is relevant if it makes the desired inference more probable than it would be without the evidence. *State v. Hamilton*, 344 S.C. 344, 543 S.E.2d 586, 591 (Ct.App.2001) (*citing* Jon P. Thames & W.M. Von Zharen, *A Guide to Evidence Law in South Carolina 28* (1987)).

Here, the fact that Benjamin was a willing, active participant in the Dodger's robbery tends to make less probable his claim that he acted under duress just a few hours earlier during the robbery of the Sweetwater Citgo. Accordingly, we find it was properly admitted to rebut his claim of duress.

9. In his appeal of the robbery of Dodger's, Benjamin maintained the robbery was "merely part of a single continuous crime spree." 341

Accordingly, we find evidence of the subsequent robbery was properly admitted.[10]

## CONCLUSION

Benjamin's remaining issue is affirmed pursuant to SCACR Rule 220(b)(1) and the following authority: *Locke v. State*, 341 S.C. 54, 533 S.E.2d 324 (2000). Benjamin's convictions and sentences are

**AFFIRMED.**

TOAL, C.J., and MOORE and BURNETT, JJ., concur. PLEICONES, J., concurring in a separate opinion.

PLEICONES, Justice:

I agree with the result reached by the majority in this case. However, because I would analyze ISSUE 3 differently, I write separately.

I would hold that Cecily McMillan's testimony recounting the events of the Dodger's robbery was admissible under Rule 404(b) SCRE only to show identity. McMillan testified that two men, one very tall and the other much shorter, robbed Dodger's. She testified that the taller man was armed with a pistol while committing the offense. Tyrone Aiken, who is

---

S.C. at 162, 533 S.E.2d at 607. If, as Benjamin claims, the crimes were one continuous spree, then they are clearly "so linked together in point of time and circumstances" that one cannot fully be shown without proving the other. *Hough, supra.*

Contrary to the concurrence's assertion, our notation of Benjamin's argument in the Dodger's appeal in no way constitutes an estoppel of his ability to challenge the contested evidence in this case. We simply highlight his argument to demonstrate the applicability of the *res gestae* exception.

10. Finally, notwithstanding its view that much of Cecily McMillan's testimony was improperly admitted, the concurrence finds the error was harmless "in light of the competent evidence presented by the State." If, however, McMillan's testimony as to what Benjamin said inside the Dodger's store were excluded, then there was no testimony rebutting his claim of duress. Accordingly, it simply cannot be said that the jury would necessarily have rejected Benjamin's claim of duress, such that any error could not be deemed harmless. *See Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834 (1992), *cert. denied*, 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993) (error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained).

much taller than Benjamin, testified that he and Benjamin robbed both the Sweetwater Citgo and Dodger's, and that only he had been armed during the crimes. He further testified that, while fleeing Dodger's, he lost the pistol used in the robberies. Police found a pistol on the ground outside of Dodger's. The State's ballistics expert testified that the gun found outside of Dodger's was the gun used in the Sweetwater Citgo killing. Eyewitnesses testified to seeing two men, one very tall and one very short, walking across the parking lot, towards the Sweetwater Citgo shortly before the robbery. The clerk in the Sweetwater Citgo testified that two men, one armed and much taller than the other, committed the Sweetwater Citgo robbery. In light of this evidence, McMillan's testimony concerning the descriptions of the Dodger's perpetrators was admissible under SCRE 404(b) to show the identity of the Sweetwater Citgo robbers.

In my opinion, it was error to allow McMillan to repeat what was said inside Dodger's because the prejudicial impact of the statement substantially outweighed its probative value. *See* Rule 403, SCRE. Nevertheless, in light of the overwhelming evidence presented against Benjamin, the error in admitting the statement was harmless.

The majority finds that McMillan's testimony was admissible because McMillan's testimony rebutted Benjamin's defense of duress, and was admissible as part of the *res gestae.*

Because the Dodger's robbery occurred *after* the Sweetwater Citgo robbery, I am not persuaded that Benjamin's actions at Dodger's were inconsistent with his claim that he was acting under duress when he committed the Sweetwater Citgo robbery.

Were he on trial for the Dodger's robbery, the statements attributed to Benjamin by McMillan would be admissible to rebut Benjamin's defense of duress, assuming Benjamin proffered such a defense. That is not the case here. Benjamin was not on trial for the Dodger's robbery. The majority superimposes Benjamin's claim that he was acting under duress when he entered the Sweetwater Citgo over his participation in the Dodger's robbery. It then finds that evidence admissible to rebut the latter claim, i.e., evidence suggesting Benjamin was not acting under duress during the Dodger's

robbery, is likewise admissible to rebut his claim of duress in the Sweetwater Citgo robbery. I would hold that evidence of Benjamin's participation in the Dodger's robbery is not admissible to rebut his claim that he acted under duress in committing the Sweetwater Citgo robbery.

In my opinion, the evidence of the Dodger's robbery was not "necessary to a full presentation of the State's case"[11] in the Sweetwater Citgo crime, such as to make the challenged evidence admissible under a *res gestae* exception to Rule 404(b), SCRE. The majority, in footnote 9, employs an estoppel analysis and finds that because Benjamin, in his appeal in the Dodger's case, argued that the crimes were part of a single continuous crime spree, he cannot now challenge a finding that the evidence was admissible, under a *res gestae* exception, since the crimes "would be 'so linked together in point of time and circumstances' that one could not be shown without proving the other." While I agree that one cannot advance conflicting factual arguments simply because his interests have changed,[12] I do not agree that Benjamin has somehow lost his right to challenge the contested evidence because he has asserted, on appeal in a different case, that the acts were part of a single crime spree.

I do, however, agree with the result reached by the majority, and would affirm the trial court's decision because, in my opinion, evidence of the Dodger's incident was admissible to establish the identity of the Sweetwater Citgo perpetrators. Because its prejudicial impact substantially outweighed its probative value, the content of Benjamin's statement directed toward the Dodger's clerk was not admissible. Nonetheless, in light of the competent evidence presented by the State, the error in admitting the statement was harmless.

---

**11.** *See State v. Hough,* 325 S.C. 88, 480 S.E.2d 77 (1997).

**12.** *See Hayne Federal Credit Union v. Bailey,* 327 S.C. 242, 489 S.E.2d 472 (1997).