THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State Respondent,
v.
Willie Singletary Appellant.
 
 
 

Appeal From Lee County
Clifton Newman, Circuit Court Judge

Unpublished Opinion No. 2006-UP-418
Submitted December 1, 2006  Filed December 18, 2006

AFFIRMED

 
 
 
Assistant Appellant Defender Aileen P. Clare, South Carolina Office of Appellate Defense, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Office of the Attorney General, of Columbia, and Solicitor C. Kelly Jackson, of Sumter, for Respondent.
 
 
 

PER CURIAM:  A Lee County jury convicted Willie Singletary (Singletary) of criminal sexual conduct with a minor in the first degree.  Singletary appeals his conviction, claiming the trial court committed reversible error when it improperly admitted his custodial statement.  We affirm.
FACTS
Singletary committed sexual misconduct against the victim, S.S., at some point on December 6th or 7th, 2003.[1]  At the time of the assault, the nine-year-old victim lived with her mother and three siblings in Singletarys mobile home.    
S.S. testified that on December 7, 2003, she was in the kitchen of Singletarys mobile home when he grabbed her and pulled her into his bedroom.  Once inside Singletarys bedroom, S.S. testified that he shut the door and pulled down both of their pants.  With his hands over her mouth, he raped her digitally, anally, and vaginally.  Conversely, in Singletarys confession, he claimed the incident occurred at the instigation of the victim outside of his mobile home on December 6, 2003.
On December 8, 2003, S.S.s school teacher noticed that S.S. was frequently visiting the restroom, so she took S.S. to the school nurse.   School officials contacted DSS, and further medical examination revealed that S.S. had recently contracted Chlamydia, a sexually-transmitted disease.  In addition, the examination showed S.S. experienced external injury as well as recent penetration to her anus but no conclusive penetration to her vagina. 
Based on the victims report of the incident, the police contacted Singletary, and he voluntarily came to the police station.  Once inside the police station, the investigating police officer testified that he read Singletary his Miranda[2] rights and explained those rights to him in lay terms.  According to the officer, Singletary never requested further explanation regarding any of his rights, but he signed the portion of the form acknowledging that he understood his rights.  The officer testified that after he read Singletary his rights, he proceeded to read a waiver of rights form, which Singletary also signed.  
Singletary, however, testified that the police never read him his Miranda rights.  Singletary also stated that the acknowledgement and waiver of rights form was never read or presented to him, and he signed it without knowledge of the forms contents.  
Furthermore, Singletary denied that the police ever showed him his custodial statement or read it to him, but he admitted to signing the custodial statement and to initialing it four times in the corners of the document.  He also claimed he told the police he did not sexually assault S.S., and only the part about S.S. rubbing his back outside his mobile home was accurate.  The custodial statement reads:

On Saturday December 6, 2003[,] I Willie was outside working on my car[,] a 1995 Chevy Silver in color.  [S.S.] came outside where I was.  I was on my knees unlocking my hood because its chained down.  While I was on my knees, [S.S.] jump [sic] on my back and started working up on me.  [S.S.] also started touching my penis.  [S.S.] grab [sic] my hand and put it on her vagina.  I started touching her back.  She got my penis hard.  She also put my hands through the leg part of her pants.  She try [sic] to put my hands inside her vagina.  

When asked why he would sign a confession without reading it or having it read to him, Singletary stated he didnt really read it; rather, he read across [it] but didnt read it word for word.  When further questioned as to whether he would be concerned about what he signed, given that he did not read its contents, Singletary said he was not worried until afterwards when the police told him that he was under arrest. 
Conversely, the investigating police officers testified that they read Singletarys confession back to him.  Moreover, they stated Singletary was allowed to read the statement, and he was in no way prohibited from altering or changing it if he wanted.  
Based on this evidence, the jury found Singletary guilty of first degree criminal sexual misconduct with a minor, and the trial court sentenced him to ten years in prison.  This appeal followed.  
LAW/ANALYSIS
Singletary argues the trial court erred when it admitted his custodial statement because it was involuntary and irrelevant.  We disagree.
I.  Voluntariness of the Custodial Statement 
Singletary first claims that his custodial statement is inadmissible because it was not freely and voluntarily given.  We disagree.
A statement obtained as a result of custodial interrogation is inadmissible unless the person was advised of and voluntarily waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  See also Dickerson v. U.S., 530 U.S. 428 (2000).  The purpose of Miranda rights is to prevent government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment. 
Arizona v. Mauro, 481 U.S. 520, 529-30 (1987).  Therefore, the State must prove by a preponderance of the evidence that a statement is voluntary.  Lego v. Twomey, 404 U.S. 477, 486 (1972); State v. Neeley, 271 S.C. 33, 40, 244 S.E.2d 522, 526 (1978).  
The trial courts determination of the voluntariness of a statement must be based on the totality of the circumstances and will not be disturbed on appeal absent an abuse of discretion by the trial court.   State v. Rochester, 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990).  When reviewing a trial courts ruling concerning voluntariness, this Court does not reevaluate the facts based on its own view of the preponderance of the evidence, but we simply determine whether the trial courts ruling is supported by any evidence.  State v. Saltz, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001).
The trial court found that Singletarys custodial statement was freely and voluntarily given, that the police afforded Singletary the proper procedural safeguards, and that Singletary knowingly and intelligently waived his rights.  Singletary signed both the waiver of rights form and his confession.  Two investigating officers, who were present during this time, corroborated that Singletary signed both forms.  Further, they testified that Singletary was afforded all the procedural safeguards required by law, and at no time did they prohibit Singletary from altering or changing his confession.  
Although Singletary testified in court that the police did not read his Miranda rights to him and that he did not knowingly and intelligently waive his rights, there is ample evidence to the contrary.   As such, we find the trial court did not err in admitting Singletarys 
statement.  
II.  Relevance of Custodial Statement 
Singletary also contends that the trial court committed reversible error when it admitted his custodial statement because it was irrelevant to the crime charged.  We disagree.
The trial court is given broad discretion in ruling on questions concerning the relevancy of evidence, and this decision will be reversed only if there is a clear abuse of discretion.  State v. Alexander, 303 S.C. 377, 380, 401 S.E.2d 146, 148 (1991).  Evidence is relevant if it tends to establish or make more or less probable some matter which is in issue upon which it directly or indirectly bears.  State v. Schmidt, 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986).  A trial judges decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances.  State v. Sweat, 362 S.C. 117, 129, 606 S.E.2d 508, 514 (Ct. App. 2004).    
Singletary attempts to argue that the introduction of his custodial statement is prior bad act evidence as it pertained to an uncharged act, and not the act described by the victim.  While prior bad act evidence is generally inadmissible because its probative value is outweighed by its prejudicial impact, this statement does not fall within the ambit of a prior bad act.  See State v. Lyle, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923); Rule 404(b), SCRE (Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.).  
Singletarys statement is sufficiently related to the charged sexual misconduct to fall within the realm of evidence that is both relevant and probative to the jurys determination of his culpability.  The State misspoke when, as one of several reasons for the custodial statements relevance, it said the statement showed his propensity to engage in sexual misconduct.  The State did not offer and the trial court did not use the statement to establish Singletarys proclivity to commit this type of crime.  Rather, the statement was offered as substantive evidence of Singletarys version of the incident.  While it differed from the victims version, his custodial statement was sufficiently related to the crime charged to support the inference that Singletary committed a crime against the victim some time during the weekend of December 6th and 7th, as stated in the indictment.  See State v. Tufts, 355 S.C. 493, 498-99, 585 S.E.2d 523, 526 (Ct. App. 2003) (holding defendants statement regarding his sexual desires, although not a direct acknowledgement of guilt, was properly admissible as a confession to the charge of criminal sexual conduct as defendant chose to convey his confession in that manner rather than a more traditional confession such as nodding affirmatively or recounting the entire crime).  
Moreover, evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears.  State v. Benjamin, 345 S.C. 470, 480, 549 S.E.2d 258, 264 n.8 (2001) (internal citation omitted).  It is not required that the inference sought should necessarily follow from the fact proved.  Id.  
The admission of the custodial statement was proper because it tended to make Singletarys testimony at trial less plausible.  At trial, Singletary denied the sexual assault and contradicted the officers testimony and his previous written confession.  As such, introduction of the custodial statement into evidence was proper for the jury to consider in determining Singletarys veracity and ultimately his guilt.
CONCLUSION
Based on the foregoing, we hold the trial court did not abuse its discretion in admitting Singletarys custodial statement.
Accordingly, the trial courts decision is 
AFFIRMED.[3] 
Anderson, Huff, and Williams, J.J., concur. 

[1] As stated below, Singletarys confession and the victims testimony conflict regarding the day and location of the sexual misconduct, which is reflected in Singletarys indictment (charging Singletary with sexual misconduct on or between December 6, 2003[] and December 7, 2003).  
[2] Miranda v. Arizona, 384 U.S. 436 (1966).
[3] We decide this case without oral argument pursuant to Rule 215, SCACR.