702 S.E.2d 568

**The STATE, Respondent,**

v.

**Tache FRANKLIN, Appellant.**

**No. 4762.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2010.
Decided Dec. 1, 2010.

Appellate Defender Robert M. Pachak, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Julie M. Thames, all of Columbia; and Solicitor David Michael Pascoe, Jr., of Orangeburg, for Respondent.

SHORT, J.

Tache Franklin appeals his convictions for voluntary manslaughter and possession of a weapon during the commission of a crime. Franklin argues the trial court erred in admitting his statement into evidence. We affirm.[1]

## FACTS

Franklin was charged with murder, first-degree burglary, and possession of a weapon during the commission of certain crimes as a result of the investigation into Stephen Raines's (Victim) death. Officer James Shumpert of the Orangeburg County Sheriff's Office was the investigating officer and took Franklin's statement at the police station.

At trial, Franklin sought to suppress his statement. The trial court held a pre-trial *Jackson v. Denno*[2] hearing to determine the voluntariness of Franklin's statement. Shumpert testified that at 11:39 a.m. at the police station on the day of the shooting, he read Franklin his *Miranda*[3] rights from the Sheriff's Office's standard *Miranda* warning form. Franklin initialed next to each *Miranda* right on the form, proceeded to sign, then crossed out his signature and stated he did not want to talk. Franklin testified at the hearing the reason he initially refused to give a statement was because he wanted to speak to an attorney.[4] Shumpert testified Franklin

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At trial before the jury, Franklin testified he told the officers he wanted to talk to a lawyer.

did not ask for an attorney. Franklin was taken to a holding cell.

At approximately 3:00 p.m., Victim died and Officer Shumpert again met with Franklin to inform him of Victim's death. Franklin testified Officer Bamberg, of the Orangeburg County Sheriff's Office, was present and told him he could receive a life sentence. Franklin claimed Bamberg's threat of life imprisonment made him panic, and he "figured [he] had to tell them something." According to Shumpert, Franklin stated "I didn't kill no one," and indicated he wanted to talk. Shumpert again read Franklin his rights, and he signed the *Miranda* form. Franklin then gave Shumpert his statement. When asked at the pre-trial hearing: "Did you freely and voluntarily give a statement to them?" Franklin responded: "Yes, I did." He admitted he was not forced or threatened or told he would spend the rest of his life in prison if he did not talk to them.

In the written portion of his statement, Franklin claimed he was at work when he received a telephone call from Damien asking for a ride to Corona Drive Apartments. Franklin called his friend, Anthony. Franklin, Damien, and Anthony met at the Citgo station. Damien got into the car with a shotgun, and Franklin dropped Anthony off "in the back" with his friend, Terrell. The men then went to the Corona Apartments. In his statement, Franklin continued:

> [T]hey went upstairs to do business. I was downstairs. I heard tumbling. I was getting ready to walk to the back with ... Anthony and Terrell, then I heard a shot go off. I left the apartment walking because Damien had my keys. Later on got picked up by the police.

The latter portion of Franklin's statement consisted of questions asked by Shumpert and answered by Franklin.

The trial court found Franklin was given his *Miranda* warnings; the second interview was to advise him of a change in the case and that he was now faced with a murder charge; and the statement was not coerced and was freely and voluntarily made.

At trial, Franklin testified he and Anthony went to Victim's house to buy an ounce of cocaine for $600. Victim let him in the back door. Neither Franklin nor Anthony was armed. Franklin went upstairs with Victim while Anthony stayed

downstairs. Victim told Franklin he needed $800. Franklin and Victim exchanged words, Franklin started to leave, Victim pushed Franklin then grabbed a rifle that was leaning against the wall. Franklin "rushed in," pushed Victim, and grabbed the gun. Franklin next tripped on a shoe and fell into the closet. The two men tussled, and Victim snatched the gun from Franklin. Franklin pulled the trigger. Franklin admitted there was no person named "Damien" involved. He testified he lied in his statement to the police because he felt he had no choice and was panicked.

The trial court properly charged the jury it must first determine the voluntariness of Franklin's statement before considering it. The jury found Franklin guilty of voluntary manslaughter and possession of a weapon. The trial court sentenced Franklin to concurrent sentences of twenty and five years' imprisonment, respectively. This appeal followed.

## STANDARD OF REVIEW

The trial court's factual conclusions as to the voluntariness of a statement will not be disturbed on appeal unless so manifestly erroneous as to constitute an abuse of discretion. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). An appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.* When reviewing a trial court's ruling concerning voluntariness, the appellate court does not reevaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial court's ruling is supported by any evidence. *State v. Saltz,* 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001).

## LAW/ANALYSIS

Franklin argues the trial court erroneously admitted his statement because he invoked his right to silence and the police initiated contact on the same charges. Franklin maintains the admission of his statement was prejudicial error because it damaged his credibility. In his statement, Franklin blamed the shooting on a third person, but at trial he asserted self-defense. We affirm.

 "A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights under *Miranda*. . . ." *State v. Aleksey*, 343 S.C. 20, 30, 538 S.E.2d 248, 253 (2000). If a suspect invokes his right to counsel, police interrogation must cease unless the suspect initiates further communication with police. *State v. Wannamaker*, 346 S.C. 495, 499, 552 S.E.2d 284, 286 (2001).

 The invocation of the right to remain silent, however, is not equivalent to the invocation of the right to counsel and "is not a permanent bar to police reinitiating contact with the suspect." *State v. Benjamin*, 345 S.C. 470, 476, 549 S.E.2d 258, 261 (2001) (citing *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975)). If an accused invokes the right to remain silent, the police may resume questioning as long as the original request to cease questioning was "scrupulously honored." *Id.* (quoting *Mosley*, 423 U.S. at 102–04, 96 S.Ct. 321).

In *Benjamin*, our supreme court opined:

Courts interpreting *Mosley* have set forth five factors to analyze to ascertain whether the defendant's right to cut off questioning was "scrupulously honored": (1) whether the suspect was given *Miranda* warnings at the first interrogation; (2) whether police immediately ceased the interrogation when the suspect indicated he did not want to answer questions; (3) whether police resumed questioning the suspect only after the passage of a significant period of time; (4) whether police provided a fresh set of *Miranda* warnings before the second interrogation; and (5) whether the second interrogation was restricted to a crime that had not been a subject of the earlier interrogation.

*Id.*

The defendant in *Benjamin* was arrested and taken to the sheriff's office. *Id.* at 475, 549 S.E.2d at 261. When asked by the officer if he wanted to talk, Benjamin invoked his right to silence, but according to the officer, did not request an attorney. *Id.* Approximately one hour later, a South Carolina Law Enforcement Division ("SLED") officer investigating the case arrived. *Id.* Benjamin agreed to talk to the SLED officer and gave oral and written statements. *Id.* Finding

the statements admissible, the supreme court stated: "[T]he *Mosley* factors are not exclusively controlling, nor do they establish a test which can be woodenly applied. Rather, the factors provide a framework for determining whether, under the circumstances, an accused's right to silence was scrupulously honored." *Id.* at 477, 549 S.E.2d at 261 (citations omitted). The court further concluded that a second interrogation is not unconstitutional merely for involving the same subject matter discussed in the first interview. *Id.* at 477, 549 S.E.2d at 262.

The *Benjamin* court found "a subsequent interrogation concerning the same crime does not, in and of itself, violate an accused's right to remain silent." *Id.* at 478, 549 S.E.2d at 262. Rather, "[w]hat is paramount is that police, under the totality of the circumstances, 'scrupulously honor' " a suspect's right to remain silent. *Id.* The court found Benjamin's right to remain silent was "scrupulously honored" as he had the right to cut off questioning at any time; the original officer immediately ceased questioning Benjamin upon his invocation of his right to remain silent; at least one hour passed before the SLED agent arrived; the SLED agent informed Benjamin of his *Miranda* rights; and Benjamin initialed and signed all the waivers. *Id.*

We likewise find, under the totality of the circumstances, Franklin's right to remain silent was "scrupulously honored." Franklin, after being advised of his *Miranda* rights, invoked his right to remain silent at approximately 11:39 a.m. on the day of his arrest. According to Officer Shumpert, Franklin did not invoke his right to counsel. More than three hours later, Officer Shumpert met with Franklin a second time to inform him of Victim's death. Shumpert again read Franklin his rights, and he signed the form. Although Officer Bamberg informed Franklin he could receive a life sentence, Franklin testified at the *Jackson v. Denno* hearing that he was not coerced or threatened, and he freely and voluntarily made his statement. We find, under the totality of the circumstances presented here, that the officers complied with the mandates of *Mosley*, and the trial court properly admitted Franklin's statement.

For the foregoing reasons, Franklin's convictions are **AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.