THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Melvin McNeil,       
Appellant.
 
 
 

Appeal From Richland County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-426
Submitted June 8, 2004  Filed June 
 30, 2004

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Pachak, of Columbia, 
 for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott 
 and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor 
 Warren Blair Giese, of Columbia, for Respondent.
 
 
 

PER CURIAM:  A Richland County jury convicted 
 Melvin McNeil of assault and battery with intent to kill.  He appeals, asserting 
 the trial court erred by (1) improperly admitting evidence of a prior bad act 
 allegedly committed by McNeil, and (2) refusing to grant a mistrial following 
 the solicitors inappropriate reference to the prior bad act evidence during 
 closing arguments.  We affirm. [1] 
FACTUAL/PROCEDURAL HISTORY
On the evening of January 2, 2001, Levette 
 Goodwin, Tyrone Rivers, and Mary Wooden were walking together along Flamingo 
 Road in the Bluff Estates neighborhood of Columbia.  As they continued down 
 the road, a vehicle drove slowly past the group and stopped a short distance 
 in front of them.  McNeil emerged from the drivers side of the car holding 
 a handgun.  Seeing this, Goodwin began running away.  McNeil fired the handgun 
 a couple of times, hitting Goodwin in his leg with one bullet.  
McNeil was subsequently arrested and charged 
 with assault and battery with intent to kill (ABIK).  At trial, the solicitor 
 introduced evidence that McNeil shot Goodwin in another incident that occurred 
 on November 12, 2000, some 50 days before the January 2, 2001 shooting.  Over 
 defense counsels objection, the trial court admitted the evidence as proof 
 of McNeils intent when he shot Goodwin on January 2, 2001.  
LAW/ANALYSIS
I.       Admission of Prior Bad Act Evidence
McNeil first claims the trial court erred 
 by admitting testimony that he allegedly shot the victim several weeks prior 
 to the incident charged.  We disagree.
Goodwin testified that he had known McNeil all 
 his life, but that hostilities developed between them sometime in late 2000 
 after they had been slap boxing at the home of Goodwins cousin: 

I was messing around and grabbed 
 [McNeil] by his leg and fell on top of him, and we was just playing, kidding 
 around.  Ever since that day [McNeil] just took it serious and he had like a 
 vendetta against me. . . . Every time he saw me it was like Im going to get 
 you, and he was like pulling out guns and wanting to fight, you know. 

Goodwin further testified that subsequent to the 
 wrestling incident, on November 12, 2000, McNeil shot him while he was walking 
 through the Bluff Estates neighborhood:

I was going to my cousins house 
 earlier that morning, and I was coming through the cut and Mr. McNeil was sitting 
 in the chair on the side of the house and he had a shotgun in his hand.
. . . .
I turned around and I jumped 
 the gate. Then he ran behind me with the shotgun and started shooting, right. 
 I was running. I was behind the lady that stays next to my cousin.  I hid behind 
 her car.  When I tried to jump the gate, thats when he got to shooting some 
 more and thats when the buck shots hit the gate and one hit me right here in 
 my arm. 

McNeil argues the admission of this testimony regarding 
 the prior shooting was unfairly prejudicial to his defense, only serving to 
 foster in the jurors minds a presumption of guilt for the crime charged.
While evidence of prior crimes or misconduct is 
 inadmissible to prove the specific crime charged, it may be admitted if it tends 
 to establish:  (1) motive; (2) intent; (3) the absence of mistake or accident; 
 (4) a common scheme or plan embracing the commission of two or more crimes so 
 related to each other that proof of one tends to establish the others; or (5) 
 the identity of the person charged with the present crime.  Rule 404(b), SCRE; 
 State v. Lyle, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923).  If not the 
 subject of a conviction, a prior bad act must first be established by clear 
 and convincing evidence.  State v. Beck, 342 S.C. 129, 135, 536 S.E.2d 
 679, 683 (2000).  The decision on whether to admit evidence of other bad acts 
 is entrusted to the sound discretion of the trial judge, and that decision will 
 not be disturbed by the appellate court if there is any evidence to support 
 the admission.  State v. Wilson, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).
In the present case, the trial court admitted 
 the evidence concerning McNeils prior assault on Goodwin as probative of McNeils 
 intent when he committed the shooting for which he was charged.  However, evidence 
 of other crimes, even if logically relevant to prove intent, is inadmissible 
 if its probative value is substantially outweighed by the danger of unfair prejudice 
 to the defendant.  Rule 403, SCRE; State v. Brooks, 341 S.C. 57, 62-63, 
 533 S.E.2d 325, 328 (2000).  The determination of prejudice must be based on 
 the entire record and the result will generally turn on the facts of each case.  
 Id.  at 62, 533 S.E.2d at 328.  Evidence is unfairly prejudicial if it 
 has an undue tendency to suggest a decision on an improper basis.  State 
 v. Owens, 346 S.C. 637, 666, 552 S.E.2d 745, 760 (2001).
Based on our review of the record before 
 us, we conclude the evidence of McNeils prior shooting of Goodwin bears sufficient 
 logical relevance to the ABIK charge in this case.  Both incidents occurred 
 close in time and under similar circumstances involving the same victim.  Evidence 
 of the November 12, 2000 shooting was, therefore, significantly probative of 
 McNeils intent when he shot Goodwin on January 2, 2001.
II.      Mistrial
McNeil next argues the trial court erred 
 by denying his motion for mistrial following the solicitors reference to the 
 November 12, 2000 shooting in his closing statement.  We disagree.
The portion of the solicitors closing 
 argument at issue was transcribed as follows:

SOLICITOR: One thing in 
 [defense counsels] opening statement that he seemed to harp on a lot was the 
 fact that it was just a leg wound.  [Goodwin] was just shot in the lower leg.  
 I submit to you, ladies and gentlemen, ask yourselves, how many times does that 
 young man have to be shot, and 
DEFENSE COUNSEL:  Your 
 Honor, I object to that argument.
TRIAL JUDGE:  I think 
 so.
DEFENSE COUNSEL:  And 
 I have a matter of law to take up whenever the court wishes.
TRIAL JUDGE:  All right, 
 sir.  Just move on please, sir.
SOLICITOR:  Yes, sir.
Shot two times, is that not enough 
 to find malice? Is that not enough for there to be malice, ladies and gentlemen?
DEFENSE COUNSEL: I continue 
 the objection, sir. 

The trial judge then convened a bench conference 
 with counsel out of the hearing of the jury.  
At the conclusion of closing arguments, 
 defense counsel moved the trial court for a declaration of mistrial on the grounds 
 that the portion of the solicitors closing argument quoted above made reference 
 to the evidence of McNeils prior bad act in a manner beyond the scope of the 
 limited purpose for which it was admitted.  Defense counsel argued that, instead 
 of being used to show McNeils intent at the time he committed the act for which 
 he was charged, the solicitor was attempting to appeal to the passion and prejudice 
 of the jury.  
The decision to grant or deny a mistrial is within 
 the sound discretion of the trial court and its ruling will not be disturbed 
 on appeal absent an abuse of discretion amounting to an error of law.  State 
 v. Harris, 340 S.C. 59, 63, 530 S.E.2d 626, 627-28 (2000).  A mistrial 
 should only be granted when absolutely necessary, and a defendant must show 
 both error and resulting prejudice in order to be entitled to a mistrial.  Id. 
 at 63, 530 S.E.2d at 628; see also State v. Beckham, 334 
 S.C. 302, 310, 513 S.E.2d 606, 610 (1999) (The granting of a motion for a mistrial 
 is an extreme measure which should be taken only where an incident is so grievous 
 that prejudicial effect can be removed in no other way.).
In this case, we do not discern any error or prejudice 
 resulting from the content of the solicitors closing statement.  The reference 
 to the two shootings and the question, how many times does that young man have 
 to be shot, while no doubt intended to capture the jurors attention, did not 
 necessarily suggest that the evidence of McNeils alleged prior bad act be considered 
 for any purpose other than to determine McNeils intent when he committed the 
 crime charged.  Indeed, one of the avenues pursued by McNeils attorney in his 
 defense was to suggest, even if McNeil did shoot Goodwin, he did not have the 
 necessary intent for the jury to find him guilty of ABIK.  The solicitors statement 
 can be reasonably interpreted as merely emphasizing the fact that the prior 
 alleged shooting tends to prove the intent with which McNeil acted when he shot 
 Goodwin on January 2, 2001.  That the jury would draw this conclusion from the 
 solicitors argument is all the more likely when considering the manner in which 
 the solicitor qualified his statement after defense counsels initial objection, 
 adding: Shot two times, is that not enough to find malice? Is that not enough 
 for there to be malice, ladies and gentlemen?  The solicitor therefore made 
 clear that he was focusing the jurys attention on McNeils intent when he shot 
 Goodwin on January 2, 2001.
CONCLUSION
For the reasons above, we find the trial court 
 did not abuse its discretion in admitting evidence of McNeils prior bad act, 
 nor did the trial court abuse its discretion in denying McNeils motion for 
 a mistrial based on the solicitors closing argument.  Finding no error, the 
 rulings of the trial court are therefore
 AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, JJ., 
 concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.