528 S.E.2d 700

**The STATE, Respondent,**

v.

**Thomas KENNEDY, Appellant.**

No. 3125.

Court of Appeals of South Carolina.

Submitted Jan. 11, 2000.
Decided Feb. 22, 2000.
Rehearing Denied May 13, 2000.

244

Assistant Appellate Defender Tara S. Taggart, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Salley W. Elliott; and Solicitor W. Barney Giese, all of Columbia, for respondent.

PER CURIAM:

Thomas Kennedy appeals his convictions for first degree burglary, grand larceny, and financial transaction card fraud arguing the trial court erred in admitting evidence of other bad acts and in denying his motion to dismiss for an alleged violation of his constitutional right to a speedy trial. We affirm.

## FACTUAL/PROCEDURAL HISTORY

The charges against Kennedy arose out of an early evening residential burglary and the use of an ATM card taken from the home. On December 23, 1994, Sandra York left her home at approximately 6:15 p.m. Her son arrived home about 7:10 p.m. He soon discovered the master bedroom was ransacked. Items missing from the home included cash, jewelry, two airline tickets, personal papers, and York's ATM card. All items taken had been inside the master bedroom. The value of these items totaled more than $16,000.00. The front door showed possible signs of damage. Officers could not determine whether the front door or a rear sliding glass door served as the burglar's point of entry.

At approximately 7:09 p.m. the same day, someone attempted to use York's ATM card at a First Citizen's ATM machine. A security camera taped the transaction, and Kennedy admitted that the still photographs made from the video tape pictured him.

The Richland County Grand Jury indicted Kennedy on charges of first degree burglary, grand larceny, and financial transaction card fraud. Before Kennedy's trial on the current charges began, the trial court denied Kennedy's motion to dismiss the charges on the ground he was denied his right to a speedy trial. Further, the trial court allowed the State to

introduce evidence that Kennedy committed three other very similar burglaries, reasoning the evidence was admissible to prove identity and a common scheme or plan, but reserving a final decision until the evidence had been introduced. At the close of the State's case, the court ruled the evidence was properly admitted as evidence of a common scheme or plan and the identity of Kennedy as the burglar.

The jury convicted Kennedy as charged. He received a life sentence for first degree burglary, and concurrent sentences of five' years for grand larceny and one year for financial transaction card fraud.

Kennedy filed this appeal, arguing the trial court erred in admitting evidence of the three other burglaries. Kennedy's appellate counsel included in her brief on this matter a petition to be relieved as counsel pursuant to *Anders v. California*,[1] claiming Kennedy's appeal was without legal merit. Kennedy filed an *Anders* response brief, arguing that his other bad acts argument has legal merit and that he also believed the trial court's denial of his motion to dismiss for a speedy trial violation was reversible error. This court denied counsel's petition to be relieved and ordered the parties to brief the issues of (1) whether the trial court erred in allowing evidence of other bad acts and (2) whether Kennedy's right to a speedy trial was violated.

## LAW/ANALYSIS

### I. Evidence of Other Bad Acts

■ Kennedy argues the trial court erred in allowing extensive testimony and other evidence concerning his involvement in three other burglaries and related financial transaction card fraud offenses. We disagree.

■ "South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged except to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, or (5) the identity of the perpetrator." *State v. King*, 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999). *See also State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923); Rule 404(b), SCRE. To be admitted, evidence of other crimes must

---

1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

be logically relevant to the crime charged. *State v. Cutro*, 332 S.C. 100, 504 S.E.2d 324 (1998). Further, where the other crimes are not the subject of conviction, they must be proven by clear and convincing evidence. *Id.* In cases where the evidence is offered as proof of a common scheme or plan, a close degree of similarity or connection between the prior bad act and the crime is necessary. *Id.* A general similarity to the charged offense is insufficient. *Id.* The common scheme or plan and identity exceptions are interrelated, as evidence of a common scheme or plan essentially goes to prove the identity of the perpetrator. *State v. Jenkins*, 322 S.C. 414, 416 n. 2, 472 S.E.2d 251, 252 n. 2 (1996). Where the close similarity between the charged offense and the previous bad act enhances the evidence's probative value so as to outweigh its prejudicial effect, the evidence is admissible. *State v. Parker*, 315 S.C. 230, 433 S.E.2d 831 (1993).

At trial, the State presented evidence that Kennedy committed similar burglaries at the homes of David Odle, Jack Pfeiffer, and Dr. Tan Platt and that he used or attempted to use bank and credit cards he took from these homes.

David Odle testified that on November 17, 1994, he left his home at approximately 6:10 p.m. and returned at about 7:30 p.m. after his girlfriend informed him she went to his home and found the back door unlocked. The door's deadbolt had been pushed through the door jam. Odle's wallet, containing credit cards, was missing from the kitchen area, which was near the back door. A briefcase and some jewelry, including a gold pocket watch, were taken from the master bedroom. The briefcase was later found outside the house. One of Odle's credit cards was used later that evening at Rich's department store to purchase a jacket and a pair of boots. Another of Odle's credit cards was used at a Footlocker store the next day. Kennedy's fingerprint appeared on the Footlocker store's copy of the credit card receipt.

On February 2, 1995 at approximately 6:30 p.m., Jack Pfeiffer and his wife left their home and went out for dinner. Pfeiffer noticed upon returning home at 8:00 p.m. that someone had broken into his house through the back door. He found that the intruder had rummaged through the master bedroom. The burglar took jewelry, a hat, and a gasoline credit card. Pfeiffer did not miss the gasoline card for several

weeks when he discovered an unusually high bill. He believed the card was left on a piano which was between the back door and the master bedroom. The other items were taken from the master bedroom. On February 22, 1995, a gasoline station security camera took photographs of a man using Pfeiffer's card. A police officer familiar with Kennedy identified him as the man in the photos. Kennedy's former girlfriend identified him from one of the photographs as well.

On February 7, 1995, police informed Dr. Tan Platt of a burglary in his home. Platt received the news at 6:50 p.m., only thirty minutes after he left home to walk down the street. It appeared the home was entered through a window. The burglar took a jewelry box and a humidor containing jewelry, as well as Platt's wallet, containing cash and credit cards, from Platt's bedroom. A man was filmed attempting to use Platt's credit card at an ATM machine around 7:30 p.m. on the evening of the burglary. Kennedy's former girlfriend and a police officer identified Kennedy from these photos.

During the course of the police investigation, officers executed a search warrant on Kennedy's home. Inside they found a ring identified by York as one taken from her house. They also found a pair of boots and a jacket which matched the items purchased at Rich's with Odle's credit card and a gold pocket watch which Odle identified as the one taken from his home.

We conclude the trial court properly allowed evidence of Kennedy's involvement in each of the other burglaries and fraudulent use of the cards taken from the homes. The crimes were very similar to the crimes for which Kennedy was tried. Each of the four burglaries occurred within a three month time span. The Odle and Pfeiffer homes were in the same area of town as York's home. Each burglary occurred during a weekday in the early evening hours between 6:00 and 8:00 p.m., the residents having all left their homes between 6:10 and 6:30 p.m. In each burglary, the master bedroom was the targeted room and only small, portable items were taken, while larger items such as televisions and VCR's were undisturbed. Items which held some of the smaller things taken from several of the homes, including safes, a briefcase, and a humidor, were discarded outside somewhere near the residences. The stolen credit or ATM cards taken from each

home were used shortly after the burglaries, and almost immediately after in the Odle and Platt cases, as well as the present case.

We find the evidence of the other burglaries and credit card fraud was logically relevant to the crimes charged and was proven by clear and convincing evidence. Further, the other crimes were not of just a general similarity, but were so closely connected to the crimes charged that the similarity enhanced the probative value of the evidence to the extent that it outweighed any prejudicial effect. Accordingly, we find no error.

## II. Motion to Dismiss for Speedy Trial Violation

Kennedy was arrested on March 15, 1995. On March 12, 1996, he moved the circuit court for a speedy trial. While awaiting trial, Kennedy remained in jail. When his trial began on May 19, 1997, Kennedy requested the court dismiss the charges against him because his right to a speedy trial was violated. Kennedy contends the trial court erred in denying this motion. We disagree.

The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the South Carolina Constitution provide that a criminal defendant is entitled to a speedy trial. *State v. Brazell,* 325 S.C. 65, 480 S.E.2d 64 (1997). In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court identified several factors to be used in determining whether a defendant has been denied the right to a speedy trial including: (1) the length of delay, (2) the reason the government uses to explain the delay, (3) when and how the defendant asserted his speedy trial right, and (4) the prejudice to the defendant. *Id.* "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* at 530, 92 S.Ct. 2182.

The trial court found the length of delay, two years and two months, was troubling and sufficient to trigger inquiry into the other factors. The court found the State's claim of a heavy docket to be accurate but insufficient to excuse the delay. However, the court was persuaded by the State's claim that

Kennedy's case was quite complicated. Further, even though Kennedy asserted his right to a speedy trial fourteen months before the trial commenced, the court noted lead defense counsel had only been counsel of record since September of 1996 and stated that the procedural history of the case outweighed any presumption of prejudice.

Assuming that the twenty-six month delay between Kennedy's arrest and trial triggers review of the remaining factors,[2] we find no violation of his right to a speedy trial. While Kennedy asserted his right to a speedy trial fourteen months prior to the commencement of his trial, the case was clearly complicated and required substantial time to investigate and prepare. Further, there is an absence of evidence in this case that the State purposefully delayed Kennedy's trial. Finally, we conclude the prejudice to Kennedy, if any, is minimal.

In considering the prejudice Kennedy suffered, we turn again to *Barker v. Wingo* for guidance.

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

*Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. 2182.

On appeal, Kennedy argues that he was prejudiced by his twenty-six month incarceration while awaiting trial. We are unwilling, however, to hold that the prejudice he suffered by his pretrial incarceration is sufficient to warrant dismissal of his charges for a speedy trial violation. At trial, he alleged, because of the delay, he was unable to locate two defense

---

2. *See Brazell, supra* (wherein our Supreme Court found a three year and five month delay sufficient to trigger review of the other factors); *State v. Waites,* 270 S.C. 104, 240 S.E.2d 651 (1978) (wherein our Supreme Court found a two year and four month delay sufficient to trigger the remaining factors).

witnesses. He does not, however, assert this claim on appeal. Further, when asked by the court how the delay affected his ability to locate witnesses, counsel could only state he was simply unable to locate them.

While Kennedy may have been slightly prejudiced by the twenty-six month pretrial incarceration, the more important question is whether he was prejudiced because the delay impaired his defense. As noted by the trial court, there is nothing to suggest the delay caused the witnesses to become unavailable. Rather, any delay should have only aided the defense in its attempt to locate the previously unlocated witnesses.

Upon our review and balancing of the *Barker* factors, we find Kennedy was not denied his constitutional right to a speedy trial. Given the complexity of the case, supplying the State with a legitimate reason for the delay, and the lack of prejudice to the defendant, we conclude the trial court properly denied Kennedy's motion to dismiss based on his assertion of a speedy trial violation.

For the foregoing reasons, Kennedy's convictions for grand larceny, first degree burglary, and financial transaction card fraud are

**AFFIRMED.**

GOOLSBY, HUFF, and HOWARD, JJ., concur.