536 S.E.2d 679

**The STATE, Respondent,**

v.

**Roy BECK, Jr., Appellant.**

**No. 25190.**

Supreme Court of South Carolina.

Heard June 20, 2000.

Decided Aug. 21, 2000.

Joseph L. Savitz, III, Deputy Attorney, and Melody J. Brown, Assistant Appellate Defender, both of the Office of Appellate Defense of Columbia, for appellant.

Charles M. Condon, Attorney General; John W. McIntosh, Chief Deputy Attorney General; Donald J. Zelenka, Assistant Deputy Attorney General; G. Robert Deloach, III, Assistant Attorney General and Warren B. Giese, Solicitor, all of Columbia, for respondent.

PLEICONES, Justice:

Appellant was convicted of murder and received a life sentence. He appeals, arguing the circuit court erred in admitting evidence of a prior bad act and of a statement he had made several months before this murder. We affirm.

## ISSUES

Did the trial judge err in admitting evidence that the appellant had assaulted and robbed an escort service employee two days prior to the murder for which he was on trial?

Did the trial judge err in admitting the appellant's statement, uttered some four months prior to this crime, that he planned to rob escort service employees?

## FACTS

On November 13, 1996, the body of Virginia Russell (Victim) was discovered lying in the road near Owens Field in Colum-

bia. An autopsy revealed that she had been shot three times in the head with a .380 caliber pistol, between 9:00 p.m. and 12:00 a.m. the preceding night.

Two purses were discovered by Victim's body, one of which contained $2.00 in change. Testimony of family members established that both of the purses belonged to Victim, and further indicated that she had had several hundred dollars with her on the night of her death.

Victim's family members also testified that Victim had worked for an escort service, and that she had received a page around 8:30 p.m. on the night of her death. Phone records established that in fact Victim was paged at 8:54 p.m. on November 12, 1996, by someone calling from a phone at the apartment of Richard Bullard (Bullard). Victim was heard mentioning "Jaco's," which is a bar in the Olympia area of Columbia, when she returned the page.

Roy Beck, Jr. (Appellant) was living with Bullard and Trevett Foster (Foster) at the time of the murder, since the power had been disconnected at his own apartment on Whitney Street in Olympia. He was previously acquainted with Victim.

During a consensual search of Bullard's apartment after the murder, police officers found a knife [1] and a .380 caliber pistol belonging to Bullard. Later tests determined that the gun was the murder weapon. Bullard also gave the police a pair of his black military-style boots which Appellant often borrowed. The boots had Victim's blood on them.

Appellant was charged with the murder of Victim.[2] During the trial, the judge allowed testimony that Appellant had assaulted and robbed another escort service employee (Employee) two days prior to the murder.[3] The trial judge,

---

1. Another escort service employee testified during the trial that the knife found in Bullard's apartment was the weapon used by Appellant to assault and rob her. *See* discussion *infra*.

2. Bullard and Foster had alibis for the night of the murder.

3. Employee also alleged that she had been raped by Appellant, but was not allowed to testify concerning this matter in the presence of the jury.

relying upon Rule 404(b), SCRE and *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923), held that the evidence was probative of identity and motive. The trial judge also ruled that the assault and robbery of Employee formed part of the *res gestae* of the murder.

The trial judge also allowed in evidence a statement made by Appellant to Larry Barlow (Barlow) four months prior to the murder, to the effect that Appellant planned to call escort services for dates and then rob and have sex with the escort service employees.

## DISCUSSION

I. The Statement to Barlow.

Barlow testified that Appellant had asked him on July 10, 1996, to participate in a plan to call escort services for dates and then rob and have sex with the employees. Barlow claimed that he had never participated in the plan, and that he had told Appellant that "it was a crazy idea."

Appellant argues that the statement should not have been admitted under *Lyle.* We agree, because *Lyle* concerns bad acts and other crimes of a defendant, not statements of intent to commit crimes. See *State v. Lyle, supra; United States v. Masters,* 622 F.2d 83 (4th Cir.1980).

Appellant's statement to Barlow is, however, admissible upon other grounds.[4] "As a general rule, statements or declarations made by one accused of a crime are admissible against him." *State v. Plyler,* 275 S.C. 291, 270 S.E.2d 126 (1980). Of course, such evidence must meet the threshold test of admissibility, i.e., relevance. See Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

In this prosecution, the state relied upon circumstantial, yet nonetheless compelling, evidence of guilt. There was, for

4. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (appellate court may affirm a ruling of a lower court upon any grounds appearing in the record on appeal).

example, no direct evidence placing Appellant at the scene.[5] Testimony that Appellant had made a statement of his intent to perpetrate such crimes—albeit four months prior to this event—was highly probative as to a manifestation of that intent through the fatal attack upon Victim. It thus bore directly on Appellant's identity as the killer as well as on the establishment of a financial motive.[6] Moreover, the probative value of Barlow's testimony far outweighed any possibility of undue prejudicial effect. *See* Rule 403, SCRE.

 The temporal attenuation between the making of this statement and the crime in this case is of no moment in assessing its admissibility. The four month lapse is at most a matter bearing on the weight of the evidence, which was for the jury to determine. *State v. Glenn,* 328 S.C. 300, 492 S.E.2d 393 (Ct.App.1997).

Appellant was not prejudiced by the erroneous admission of his statement to Barlow as a *Lyle* exception, as it was otherwise admissible as discussed herein.

II. The Employee Robbery.

Appellant next argues that evidence of the assault and robbery of Employee was not admissible under *Lyle* or *res gestae.* We disagree in part, and find that the evidence was properly admitted under *Lyle*'s identity exception.

 Evidence of other crimes or bad acts is inadmissible to prove the bad character of the defendant or that he acted in conformity therewith. Such evidence is admissible, however, when it tends to establish motive, identity, a common scheme or plan, the absence of mistake or accident, or intent. See Rule 404(b), SCRE; *State v. Lyle, supra.* In addition, the "bad act" must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing. *State v. Kennedy,* 339 S.C. 243, 528 S.E.2d 700 (Ct.App.2000). Finally, even if the evidence meets the above criteria, the trial judge must exclude it if its

---

5. A human hair, the source of which was established by forensic testimony to be Appellant's, was, however, found on Victim's skirt.

6. *See* Rule 801(d)(2)(A), SCRE (admission of a party-opponent).

probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* at 247, 528 S.E.2d at 702; Rule 403, SCRE.

■ Employee testified that she received a call through her escort service at 4:00 a.m. on November 10, 1996. The customer did not identify himself, but gave his address as an apartment on Whitney Street in the Olympia area of Columbia. Police officers later found that the apartment belonged to Appellant. After her arrival, Employee entered the apartment and a man wearing black, military-style boots held a knife to her throat. When she asked if he had a gun, the man "smirked" and said, "Don't make me use it." The man took $300.00 from Employee's purse before releasing her. She later identified Appellant as the robber, and the knife found in Bullard's apartment as the weapon used during the assault.

Employee's testimony was admissible to prove the identity of the appellant as the perpetrator of Victim's murder. Employee testified that Appellant wore black military-style boots when he assaulted and robbed her. A pair of boots matching that description and covered with Victim's blood were given to the police by Bullard, Appellant's roommate. In addition, Employee identified a knife belonging to Bullard as the one with which Appellant had threatened her. The gun used to shoot Victim was also owned by Bullard. Both weapons were easily accessible to Appellant, and Bullard testified that Appellant had borrowed the gun before the murder.

Employee's testimony is admissible to identify Appellant as Victim's murderer because both perpetrators committed similar offenses within a relatively short period of time, using weapons belonging to Bullard and wearing his boots. See *State v. Forney*, 321 S.C. 353, 468 S.E.2d 641 (1996) (evidence that defendant was the gunman in an earlier robbery was admissible to prove that he, not his co-defendant, shot a police officer).

■ Appellant claims that even if evidence of the assault and robbery of Employee is admissible under *Lyle,* it is unduly prejudicial. We disagree. After conducting a *Lyle* analysis and finding evidence both relevant and admissible as a prior bad act, the trial court must conduct a Rule 403, SCRE analysis to determine whether or not the evidence is unduly prejudicial. We find that evidence of the assault and robbery,

although certainly prejudicial to Appellant, is not unduly so under our previous decisions.[7] Moreover, as conceded in Appellant's brief to this Court: "The person who killed call girl Virginia Russell the night of November 12, 1996, used Richard Bullard's gun and was probably wearing his boots." The evidence of the crimes committed against Employee is both clear and convincing and logically relevant to the murder charge.

Since evidence of the assault and robbery of Employee is clearly appropriate to prove identity, we need not conduct a more extensive analysis regarding motive or common scheme or plan.[8]

■ Appellant also argues that evidence of Employee's assault and robbery should not be admissible as part of the *res gestae* of the murder. We agree the crimes were not part of the same criminal episode, since the murder occurred nearly two days after the assault and robbery of Employee. Further, the crimes are not so intertwined that one cannot be proven without mention of the other. See *United States v. Masters*, 622 F.2d 83 (4th Cir.1980); *State v. Smith*, 309 S.C. 442, 424 S.E.2d 496 (1992).

While we thus agree with Appellant that evidence of the assault and robbery of Employee is not admissible as *res gestae*, we hold that Appellant suffered no prejudice as it was properly admitted to prove the identity of Victim's murderer. See *State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995) (error without prejudice does not warrant reversal).

## CONCLUSION

Based on the foregoing discussion, the decision of the Court of Appeals is **AFFIRMED**.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

7. See, e.g., *State v. Dickerson*, 341 S.C. 391, 535 S.E.2d 119 (2000); *State v. Smith*, 337 S.C. 27, 522 S.E.2d 598 (1999); *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986).

8. Although the trial judge did not admit Employee's testimony for the purpose of a common scheme or plan, the State was allowed to make this argument on appeal. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mt. Pleasant, supra.*