THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Dennis L. Snipes, Jr., Appellant.
 
 
 

Appeal From Lancaster County
 James E. Lockemy, Circuit Court Judge

Unpublished Opinion No. 2006-UP-363
Submitted October 1, 2006  Filed October 24, 2006    

AFFIRMED

 
 
 
 John F. Hardaway, of Columbia, and Lorilee M. Gates, of Studio City, for Appellant.
 Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Salley W. Elliott; Senior Assistant Attorney General Norman Mark Rapoport, of Columbia, and John R. Justice, of Chester, for Respondent.
 
 
 

PER CURIAM:  Dennis L. Snipes, Jr. appeals his conviction for criminal sexual conduct with a minor in the first degree, contending the trial court erred in failing to find Snipes right to a speedy trial was violated and in denying his motion for a directed verdict. We affirm.[1]  
FACTUAL/PROCEDURAL BACKGROUND
In March of 2000, Snipes was living with his then girlfriend (Mother), her two children from a previous relationship, and Mothers youngest child, who was Snipes son.  On the morning of March 18, 2001, Mother took the youngest child to get a haircut, leaving Snipes home alone with Mothers two older children.  When Mother came home, her six year-old daughter (Victim) told Mother she had been sexually assaulted by Snipes.  Mother took all three children to her sisters house at which time the police were contacted.  
When the police arrived, they spoke to Victim and then proceeded to Snipes home, where Victim had indicated the assault occurred.  Once at the home, they found Snipes, along with his mother and his father, at the residence.  Snipes parents came to the house because Snipes had telephoned his mother and his parents knew he was upset.  Having received a call regarding someone making a threat to themselves with a firearm, the officers expected there might be weapons present at the scene.  Officers observed Snipes sitting on the couch within reach of a loaded pistol.  
Snipes told the officers that he had been watching a sexually explicit videotape when Victim walked in and observed on the tape a person in a car performing a lewd act.  Snipes stated to the officers that he told Victim if she ever stole from her mother again, he would make her do that to him.  As a result of a conversation they had with Mother and Victim, officers seized a red t-shirt, a white t-shirt, and a blue washcloth from the scene to be sent for DNA analysis.  
Later, at the Sheriffs Office, Snipes gave a written statement in which he reiterated that he was watching an X-rated movie when Victim walked into the room.  According to Snipes statement, Victim saw a woman performing oral sex on a man in a car.  When Victim said what the girl was doing was nasty, Snipes told Victim, if she stole from her mother again I will do you like that.  
Snipes was arrested on March 18, 2000.  Shortly thereafter, he posted bail and was out on bond.  The case was dismissed at a preliminary hearing in mid-May 2000.  On June 15, 2000, Snipes was directly indicted.  Snipes was not arraigned until February 2002, at which time he was not jailed.  Instead the State consented to Snipes remaining free on bond.  On July 30, 2002, a hearing was held on the States motion to require Snipes to submit to a blood test.  Snipes was ultimately brought to trial on August 3, 2004.  
On the day of trial, Snipes moved to dismiss the charge based on the more than four-year delay in bringing the case to trial.  Defense counsel argued Snipes was prejudiced by the delay inasmuch as one possible defense witness, Dr. James Foutty, was no longer employed with the local hospital.  Defense counsel admitted he had not attempted to locate the doctor by contacting the state medical board.  Additionally, the State maintained the testimony Snipes sought to elicit from the doctor was not contested.[2]  Snipes further argued he was prejudiced by the delay because the event had occurred over four years ago, Victim was six years old at that time of the event and eleven years old at the time of trial, and her memory was therefore not reliable.  Snipes conceded he had not made a speedy trial motion prior to the day of trial and had not brought his desire to bring the case to trial to the courts attention prior to that day.  After hearing the solicitors explanation for the delay, the trial court noted it was concerned with the delay, and the ages of the cases in general in that county.  However, the court found it [did not] reach the point . . . where [the court would] grant [the] motion to dismiss, finding Snipes failed to show enough prejudice in the delay of the case to warrant dismissal.  
Victim testified at trial that on the morning of the incident, Mother took her brother to get a haircut, leaving her at home with her other brother and Snipes.  She and her brother were folding clothes in the living room when Snipes called her into his bedroom, where Snipes was sitting on the bed.  Snipes told Victim to shut the door and to take off her clothes, or she would be in trouble or get spanked.  Victim removed her clothes, at which point Snipes pulled down his own pants and told her to suck his private part or [she] would get spanked.  Victim did as she was told.  As she was performing the act on Snipes, he rubbed Victims back.  It ended when Victim simply stopped.  She did not see anything come out of his private part at anytime.  Victim rolled over on her back, and Snipes instructed her to close her eyes and turn her head.  Snipes went into the bathroom, came out with a rag with something on it, and rubbed the rag on her stomach.  When he placed the rag on her, she felt a watery sensation.  She then opened her eyes, got up, and put on her clothes.  Snipes told Victim not to tell anyone what happened or she would get in trouble and be spanked.  When Mother came home, she asked Victim what was wrong, and Victim told her what had happened.  The State presented testimony from two police officers, a victims assistance coordinator, a childrens advocacy coordinator, and from Mother confirming that Victim reported she had been sexually assaulted on the day in question at her home.  
Although a stain was found on the red t-shirt belonging to Victim, no semen was detected on that, nor on the other t-shirt or the washcloth seized from the home.  Neither was semen found on Victim.  
Snipes took the stand in his defense.  He testified that on March 18, 2000, Mother left the house to take their son to get a haircut.  After the other children finished folding clothes, he instructed them to clean their rooms.  Snipes began watching a sexually explicit tape.  He did not believe the children would see the tape because they were not allowed out of their rooms until the rooms were clean.  Victim walked in while a scene was playing which showed a woman performing oral sex on a man in a car.  Victim stated, Oh Daddy, thats nasty.  This startled Snipes, and he responded by screaming at her and telling her if she ever stole money from her mother again, Ill do you like that.  Snipes denied he had ever done anything of a sexual nature to Victim.  
At the close of the States evidence, Snipes moved for a directed verdict arguing the State failed to present evidence of the crime of criminal sexual conduct.  The trial court denied the motion, finding there was evidence presented from which the jury could find Snipes guilty.  At the close of all evidence, Snipes renewed his motion for directed verdict asserting the State failed to present sufficient evidence of his guilt.  The court again denied the motion.  Thereafter, the jury found Snipes guilty of criminal sexual conduct with a minor in the first degree, and Snipes was sentenced to ten years in prison.  This appeal followed.
LAW/ANALYSIS
I.  Right to a Speedy Trial 
Snipes contends the trial court erred in failing to dismiss the case on the ground that his right to a speedy trial was violated.  We disagree.
The Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article 1, Section 14 of the South Carolina Constitution guarantee an accused the right to a speedy trial.  State v. Kennedy, 339 S.C. 243, 249, 528 S.E.2d 700, 703 (Ct. App. 2000), affd 348 S.C. 32, 558 S.E.2d 527 (2002);  State v. Brazell, 325 S.C. 65, 74, 480 S.E.2d 64, 70 (1997);  State v. Chapman, 289 S.C. 42, 44, 344 S.E.2d 611, 612 (1986).  The determination of whether or not an accused has been denied his constitutional right to a speedy trial depends on the circumstances of each case.  Brazell, 325 S.C. at 75, 480 S.E.2d at 70;  State v. Monroe, 262 S.C. 346, 349, 204 S.E.2d 433, 435 (1974).  In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court identified four factors to be used in determining whether a defendant has been denied the right to a speedy trial:  1) the length of the delay;  2) the reason the State asserts to justify the delay;  3) when and how the defendant asserted his right to a speedy trial;  and 4) the prejudice to the defendant.  Id. at 530;  see also Brazell, 325 S.C. at 75, 480 S.E.2d at 70.   The Supreme Court noted the courts must engage in a balancing test with these related factors, which must be considered together with such other circumstances as may be relevant.  Barker, 407 U.S. at 533.  South Carolina has recognized these factors and adopted this balancing approach to the speedy trial analysis.  Brazell, 325 S.C. at 75, 480 S.E.2d at 70;  Chapman, 289 S.C. at 44, 344 S.E.2d at 612.
The first factor, length of delay, acts as a threshold requirement.  Barker, 407 U.S. at 530.   Until there is some delay which is presumptively prejudicial, it is not necessary to inquire into the other factors.  Id.  In determining when a defendants right to a speedy trial begins to run, we must consider the purpose of the speedy trial guarantee.  Chapman, 289 S.C. at 44, 344 S.E.2d at 612.  

 The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time;  that interest is protected primarily by the due process clause and by statutes of limitations.  The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but never the less substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.  
 Once charges are dismissed, the speedy trial guarantee is no longer applicable.  At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation.

Id. at 44-45, 344 S.E.2d at 612-13 (quoting United States v. McDonald, 456 U.S. 1, 8-9 (1982)).  Thus, the time during which an indictment is dismissed and a defendant is free of all restrictions on his liberty should be excluded from the length of delay.  Id. at 45, 344 S.E.2d at 613.      
In the case at hand, it appears Snipes was not incarcerated on this charge but for a few days. However, his liberty was clearly impaired and his life disrupted during the considerable period of time he was out on bond.  Snipes was arrested mid-March of 2000. While the charges were dismissed two months later, he was then indicted on June 15, 2000, only one month later, and the charge remained hanging over his head until the time of trial in early August 2004.  Accordingly, the length of delay in this matter is four years and three and a half months.  Although delay alone is not dispositive in the speedy trial analysis, this substantial delay by the State in prosecuting the case is sufficient to trigger review of the remaining factors.  See State v. Robinson, 335 S.C. 620, 625, 518 S.E.2d 269, 272 (Ct. App. 1999) (finding five-year delay between arrest and trial of defendant for computer crime was sufficient to trigger review of remaining factors to be considered in determining whether defendant was denied his right to speedy trial);  Brazell, 325 S.C. at 75, 480 S.E.2d at 70 (finding a three-year and five-month delay was sufficient to trigger review);  State v. Waites, 270 S.C. 104, 108, 240 S.E.2d 651, 653 (1978) (finding a two-year and four-month delay in prosecution was sufficient to trigger speedy trial analysis).
As for the second factor of the Barker test, reason for delay, the State admitted that there were many reasons for the delay that were not going to be acceptable to the court.  The solicitor stated:  

 . . . One is we have cases that are older than this that we havent gotten to yet.  We dont have enough court time to move cases in a timely fashion and thats not a good excuse.  Another is that we discovered that we had in fact seized some physical items.  In my preparation of this case months and months  actually a couple of years ago I determined that we had basically sat on those items at the sheriffs office, nothing had been done with them.  In fairness to everybody we felt like we needed to send them to SLED to see what they could do with it.  We did that - - a sample was listed by SLEDs DNA processing department from one article of clothing.  We now had something maybe to be compared with the blood samples from the victim and the defendant.  I then tried to get [the defense attorney] to see if his client would consent to the submission of his blood sample, he wouldnt.  We had to go through the process of a motion and doctors appointments to get all of that done.  So all of it is not our fault.  We finally got the blood sample, we sent it to SLED, the reports came back and then I scheduled it for trial.  

Thus, it appears the delay was due in part to an overcrowded docket and the States failure to promptly have some of the evidence tested.  However, the record shows the solicitor took steps to have the items tested once he became aware of their existence.  Further, it should be noted that Snipes also contributed to the delay.  In June 2002, after discovering further testing was needed on the red t-shirt seized by the officers, the solicitor filed a motion requesting Snipes submit to a blood test in order to speed up the process of testing.  Snipes opposed the motion, necessitating a hearing on July 30, 2002.  While Snipes was well within his rights to challenge his submission to a blood test, he cannot now claim this additional delay was attributable to the State.    Finally, there is simply no evidence the State purposely delayed Snipes trial.  See Kennedy, 339 S.C. at 250, 528 S.E.2d at 704 (noting absence of evidence of purposeful delay by State in considering reason for delay factor in speedy trial analysis);  Barker, 407 U.S. at 531 (finding deliberate attempt to delay a trial in order to hamper the defense should be weighted heavily against the government while a more neutral reason such as negligence or overcrowded docket should be weighted less heavily). 
Next, we must consider when and how Snipes asserted his right to a speedy trial.  The record shows Snipes did not make a motion concerning the delay until the day of trial.  While Snipes contends he complained of the delay during the July 30, 2002 hearing, a thorough reading of the record shows Snipes never placed any objection on the record in regard to the delay prior to the day of trial.  Rather, as previously noted, the transcript from that hearing shows the solicitor was very concerned with the delay in bringing the matter to trial and that this prompted his motion for Snipes to submit to the blood test.  Snipes objected at the hearing only to the intrusion of a blood test based on the solicitors admission the seized items had been coming back [with] negative [results].  Snipes maintained that, since its been that long, to send a blood sample in with the other items creates a possibility of suspicion as to how the analysis was conducted.  Further, Snipes conceded during his motion to dismiss based on his speedy trial violation that he had not brought the matter to the courts attention and had not made a motion for speedy trial or to dismiss until the day of trial.  Accordingly, Snipes failed to assert this right until the trial was ready to start.  See also Robinson, 335 S.C. at 626, 518 S.E.2d at 272 (finding appellants letters written to solicitor and Chief Administrative Judge indicating he was ready for trial were insufficient to trigger assertion of appellants right to a speedy trial and such right was not asserted until he filed his formal motion to dismiss).  
While the United States Supreme Court rejected the demand-waiver rule[3] as applied to the right to a speedy trial in Barker, the manner in which the defendant asserts his right thereto is nonetheless an important factor to be considered.  Waites, 270 S.C. at 108, 240 S.E.2d at 653.  In Barker, the court considered the fact that Barker did not want a speedy trial to be [m]ore important than the absence of serious prejudice.  Barker, 407 U.S. at 534. The court noted, the more serious the deprivation, the more likely the defendant is to complain, and a defendants assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he has been deprived of the right.  Id. at 531-32.  The court added, [w]e emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.  Id. at 532.  Accordingly, Snipes failure to assert his right to a speedy trial until the day the trial began militates strongly against him in his argument that he was denied his right to a speedy trial.  
Lastly, we must examine whether Snipes suffered prejudice as a result of the delay.  In considering this factor, the Barker court noted it should be assessed in light of the interests of defendants the speedy trial right was designed to protect.  Barker, 407 U.S. at 532.  These interests include: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Id.  Of these, the most serious is the impairment of the defense, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.  Id.;  see also Kennedy, 339 S.C. at 250, 528 S.E.2d at 704 (quoting Barker).   
On appeal, Snipes asserts he was prejudiced by the delay because the evidence showed Victims memory was faulty, the only evidence against him was that of Victims testimony, and her credibility was bolstered by the five witnesses who corroborated her allegation of sexual abuse.[4]  The court in Barker noted there is prejudice if defense witnesses are unable to recall accurately events of the distant past.  Barker, 407 U.S. at 532.  However, Snipes does not contend he or any of his other witnesses were unable to recall the events surrounding this case.  Rather, he claims prejudice in Victims inability to remember the events.  Further, the Barker court also noted that deprivation of the right to a speedy trial may sometimes work to an accuseds advantage.  Id. at 521.  Specifically, the court discussed how, as the delay between commission of a crime and the trial increases, witnesses may become unavailable and memories may fade.  However, where the witnesses support the prosecution, it is the prosecutions case that will be weakened, sometimes seriously so, as it is the prosecution that carries the burden of proof.  Id.  This is precisely what occurred in the case at hand.  The fact that Victim had some difficulty remembering what happened on the day in question was well explored by defense counsel, and used to Snipes advantage in attacking Victims credibility.  Thus, considering the fact that Snipes was able to attack Victims credibility, showing little, if any, impairment to his defense, along with the fact that Snipes was incarcerated very briefly prior to his trial, we conclude there was minimal prejudice to Snipes.  
Although the delay of over four years is substantial, upon our review and balancing of the Barker factors, we find Snipes was not denied his constitutional right to a speedy trial and the trial court properly denied Snipes motion to dismiss. 
II.  Directed Verdict
Snipes argues the trial court erred in denying his motion for a directed verdict.  He argues Victims testimony was based on her review of papers and talking to others rather than her personal knowledge, and therefore there was no competent evidence reasonably tending to prove his guilt.  We disagree.
When a motion for a directed verdict is made in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not with the weight of the evidence.  State v. Brown, 360 S.C. 581, 586, 602 S.E.2d 392, 395 (2004).  The accused is entitled to a directed verdict when the evidence merely raises a suspicion of guilt or when the State fails to present evidence on a material element of the offense charged.  Id.  However, if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the trial court properly submitted the case to the jury.  State v. McGowan, 347 S.C. 618, 622, 557 S.E.2d 657, 659 (2001).  In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State.  State v. Fennell, 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000).   
Viewing the evidence in the light most favorable to the State, we find there was sufficient evidence presented that reasonably tended to prove Snipes guilt.  Victim testified in detail about Snipes sexual assault on her on the day in question.  While Victim did state she had difficulty remembering some things that occurred and she had to refresh her memory through papers and talking with other people before these matters would come back to [her], she maintained that what she had testified to at trial was what had in fact happened.  Additionally, her testimony was corroborated by the testimony of the two investigating officers, a victims assistance coordinator, and a childrens advocacy coordinator, as well as her mother, who all testified that Victim complained that she was sexually assaulted in her home on the date alleged.  Finally, the fact that Snipes asserts Victims testimony should not be believed is not a basis for a directed verdict.  Instead, Snipes argument is one of credibility, which is to be resolved by the jury.  See State v. Ham, 268 S.C. 340, 341, 233 S.E.2d 698, 698 (1977) (Where the determination of guilt is dependant upon the credibility of the witnesses, a motion for a directed verdict is properly refused.)   Accordingly, the trial court properly denied Snipes motion for a directed verdict.  
For the foregoing reasons Snipes conviction is 
AFFIRMED.  
ANDERSON, HUFF, JJ. and CURETON, A.J., concur

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] On appeal, Snipes only argues the reliability of Victims testimony was diminished by the delay.  He does not assert any prejudice based on Dr. Fouttys inaccessibility.  
[3] The demand-waiver doctrine, as discussed by the court in Barker, provides that a defendant would waive any consideration of his right to a speedy trial for any period prior to his demand of a trial, thus requiring prior demand as a necessary condition to consideration of the speedy trial right.  Barker, 407 U.S. at 525.   
[4] It should be noted that Snipes did not object to the corroboration evidence offered by the State at trial.  Additionally, the testimony was limited to time and place of the assault, excluding any detail of the incident.  See Simpkins v. State, 303 S.C. 364, 367, 401 S.E.2d 142, 143 (1991) (holding, when criminal sexual conduct victim testifies, corroborative evidence from other witnesses that victim complained of sexual assault is admissible, limited to time and place of the assault and excluding details or particulars).