ACTING JUSTICE TOAL:
I respectfully dissent. Because I would affirm the court of appeals’ decision finding that the trial court did not abuse its discretion in refusing to dismiss the murder charge against Alexander Hunsberger (Petitioner) on the basis of the State’s failure to provide a speedy trial, I would dismiss the writ of certiorari as improvidently granted.

I. Facts and Procedural Background

On September 3, 2001, Samuel Sturrup (the victim) was murdered. The State alleged Steven Barnes, Richard Cave, Antonio Griffin, and Charlene Thatcher began an assault on the victim in Georgia because Barnes believed the victim had stolen money from him. Barnes called Petitioner and Julio, who drove from South Carolina to Augusta, where the group placed the victim in the trunk of Julio’s car. Barnes, Cave, Griffin, and Thatcher followed Petitioner and Julio in another *353 ear to a remote area of Edgefield County, South Carolina. When they arrived, Barnes ordered everyone in the group to shoot the victim, and Barnes fired the fatal shot into the back of the victim’s head.
On January 25, 2002, Petitioner was arrested in South Carolina for the murder of the victim and was held without bond. On March 25, 2002, a grand jury indicted Petitioner for murder. On June 14, 2002, Petitioner was denied bail. Another bond hearing was held on April 29, 2004, before the Honorable William P. Keesley. While Judge Keesley denied bail, he provided that Petitioner could renew his motion if the State failed to try Petitioner during the next term of court. On November 17, 2004, Petitioner filed a motion to dismiss the charges against him or release him on a personal recognizance bond based upon the State’s failure to give him a speedy trial, denial of due process, unreasonable confinement without bail, and violation of S.C. Code Ann. § 17-23-90.[8] Judge Keesley heard arguments on the motion in December 2004, and by order filed December 3, 2004, Judge Keesley denied the motions. However, Judge Keesley expressed “deep[] con-cerní ] about the length of time that ha[d] transpired without bringing [Petitioner] to trial” and noted that “[t]hree years in jail awaiting trial on this charge [was] clearly bordering on excessive.” Judge Keesley further offered to create a special term of court for the purpose of proceeding with Petitioner’s trial in February 2005, and in his order, permitted Petitioner to renew his motion if he had not been tried by February 2005. The Court “again admonished [the State] that unless immediate steps [were] taken to bring this case to trial promptly, the court [would] have no option under the constitutions of the United States and South Carolina except to release the defendant from jail in South Carolina.”
The State subsequently notified Judge Keesley that it did not intend to try the case in February, and Petitioner filed a second speedy trial motion. On January 28, 2005, Judge Keesley issued an order denying Petitioner’s motion to dismiss the charges, but granted Petitioner a $50,000 personal recog- *354 nizanee bond. However, Judge Keesley placed a condition on the bond that Petitioner was not to be released from custody until Georgia released its hold on Petitioner. Judge Keesley also invited Georgia officials to begin extradition proceedings. Thereafter, the State relinquished custody of Petitioner to Georgia. Petitioner and Julio were jointly tried in Georgia and were convicted of kidnapping in September 2006. They were sentenced to life imprisonment.
After the State obtained a death penalty conviction in Barnes’s case in November 2010, the State sought to extradite Petitioner to South Carolina in early 2011. It is unclear when exactly Petitioner was extradited to South Carolina; however, Petitioner proceeded to trial on January 3, 2012. During pretrial motions, Petitioner sought to have his South Carolina charges dismissed because the State had violated his constitutional right to a speedy trial. The trial court denied the motion, and Petitioner appealed. The court of appeals affirmed. See State v. Alexander L. Hunsberger, Op. No. 2014-UP-381, 2014 WL 5772563 (S.C. Ct. App. filed Nov. 5, 2014). We granted certiorari to consider Petitioner’s claim that he was denied his constitutional right to a speedy trial.

II. Analysis

“In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.” U.S. Const, amend. VI; see also S.C. Const, art. I, § 14 (“Any person charged with an offense shall enjoy the right to a speedy ... trial.”). The right has been described as “necessarily relative,” in that “[i]t is consistent with delays and depends upon circumstances.” State v. Langford, 400 S.C. 421, 441, 735 S.E.2d 471, 481 (2012) (quoting Beavers v. Haubert, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950 (1905)). In other words, “[a] speedy trial does not mean an immediate one; it does not imply undue haste, for the [Sjtate, too, is entitled to a reasonable time in which to prepare its case; it simply means a trial without unreasonable and unnecessary delay.” Id. at 441, 735 S.E.2d at 481-82 (quoting Wheeler v. State, 247 S.C. 393, 400, 147 S.E.2d 627, 630 (1966)).
Even though the United States Supreme Court has provided that speedy trial issues should be resolved on an ad hoc *355 basis, the Court has identified several factors to be considered when deciding speedy trial issues, including: (1) the length of the delay; (2) the reason(s) the government provides to justify the delay; (3) the timing of the defendant’s assertion of his right to speedy trial; and (4) the prejudice resulting to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); see also State v. Foster, 260 S.C. 511, 197 S.E.2d 280 (1973) (recognizing Barker factors as applicable under South Carolina law). The Supreme Court has explained that not one of these factors is “either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.” Barker, 407 U.S. at 533, 92 S.Ct. 2182. Rather, the factors are interrelated and “must be considered along ‘with such other circumstances as may be relevant.’ ” Langford, 400 S.C. at 441, 735 S.E.2d at 482 (quoting Barker, 407 U.S. at 533, 92 S.Ct. 2182). Thus, courts should weigh “ ‘the conduct of both the prosecution and the defense.’ ” Id. at 441-42, 735 S.E.2d at 482 (quoting Barker, 407 U.S. at 529-30, 92 S.Ct. 2182).
The “triggering mechanism” of the Barker analysis is the length of the delay. Id. at 442, 735 S.E.2d at 482 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). When a defendant asserts his speedy trial right, the court “should not even examine the remaining factors ‘[ujntil there is some delay which is presumptively prejudicial.’ ” Id. (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182). “The clock starts running on a defendant’s speedy trial right when he is ‘indicted, arrested, or otherwise officially accused,’ and therefore we are to include the time between arrest and indictment.” Id. (quoting United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)), Notably, however, “even the length of time necessary to trigger the full inquiry ‘is necessarily dependent upon the peculiar circumstances of the case.’ ” Id. (quoting Barker, 407 U.S. at 530-31, 92 S.Ct. 2182). Further, the Supreme Court has explained that “as the term is used in this threshold context, ‘presumptive prejudice’ does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.” Doggett v. United States, 505 U.S. 647, 652, n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

*356
A. Triggering Factor and Length of Delag

I agree with the majority and the court of appeals that Petitioner’s incarceration South Carolina from January 2002 until January 2005 is presumptively prejudicial and therefore triggers further analysis into the causes of the delay using the Barker factors. See id.; State v. Waites, 270 S.C. 104, 108, 240 S.E.2d 651, 653 (1978) (finding a two year, four month delay was sufficient to trigger further review of the Barker factors). I also agree with the majority’s analysis of the length of time factor within the context of the Barker inquiry. Under the majority’s formulation, the State is responsible for an eight-year delay in prosecuting Petitioner. I disagree, however, with how the majority analyzed the delay within the context of the remaining Barker factors.

B. Reason for Delay

In assessing this element, this Court has interpreted Barker as follows:
The ultimate responsibility for the trial of a criminal defendant rests with the State. Barker, 407 U.S. at 531, 92 S.Ct. 2182. Therefore, the court should weigh heavily against the State any intentional delays to impede the defense. Id. Where the reason for the delay is more neutral, the court should weigh it less heavily against the State. Id. A valid reason presented by the State may justify an appropriate delay. Id. However, the Court must also consider and weigh the defendant’s contribution to the delay in determining whether the defendant’s Sixth Amendment rights have been violated. Waites, 270 S.C. at 108, 240 S.E.2d at 653 (holding defendant’s contribution to the delay of the trial militated against a finding of a violation of the right to a speedy trial).
State v. Pittman, 373 S.C. 527, 549, 647 S.E.2d 144, 155 (2007).
As noted by the majority, the State has provided the following reasons for the delay: (1) the complexity of the case; (2) the fact that there were two separate jurisdictions endeavoring to prosecute Petitioner; (3) the need to collect witnesses; and (4) the decision to seek the death penalty in Petitioner’s case. The majority finds that this was a simple crime, and therefore, to the extent the court of appeals found it to be complex, the court of appeals erred. In my opinion, this case *357 was unique in that it required a great deal of coordination within the Solicitor’s office and amongst the jurisdictions to pursue these prosecutions. As astutely explained by the trial judge:
It’s a rather unique case for a lot of reasons. It’s unique in the sense that you have cross-border issues, you have Georgia wanting to pursue Georgia’s case, but South Carolina wanting to pursue South Carolina’s cases, each defendant asserting their individual constitutional rights and the State having a capital case that [it is] wanting to pursue and [has] successfully pursued. So this case doesn’t follow the normal framework of cases where a person is—has a charge outstanding and simply wants to get it tried, wants to get it over with. This is a case that has a number of complicated factors that bring us to this moment in time.
The trial judge found that the State had “demonstrated legitimate reasons for the delay given the complex nature of the eases, [and] the problems involving prosecutions in multiple jurisdictions in this state as well as the State of Georgia.”
In my opinion, the trial court did not abuse its discretion in finding the State presented legitimate reason for the delay. See, e.g., State v. Kennedy, 339 S.C. 243, 250, 528 S.E.2d 700, 704 (Ct. App. 2000) (“While Kennedy asserted his right to a speedy trial fourteen months prior to the commencement of his trial, the case was clearly complicated and required substantial time to investigate and prepare. Further, there is an absence of evidence in this case that the State purposefully delayed Kennedy’s trial. Finally, we conclude the prejudice to Kennedy, if any, is minimal.”). Here, the State was dealing with the potential for six separate prosecutions (one of which involved the State seeking the death penalty and two that involved the possibility of the death penalty); the various defendants were asked to be witnesses in the other cases; and the crime occurred in two states, both of which were seeking to prosecute the defendants.[9] In light of these unique facts, it *358 is my opinion that the court of appeals did not err in upholding the trial court’s finding that the reasons given for the delay were reasonable. See Pittman, 373 S.C. at 552, 647 S.E.2d at 156-57 (“The record does not reflect any intentional or malicious delays by the prosecution, nor does the record reflect any negligent prosecutorial behavior in connection with this case. Additionally, the delays attributable to the defense were also reasonable in light of the circumstances of this case. Although it took a long time for the case to come to trial, any delay was the result of the complexities of this case. The justifications for the delay offered by both parties in this case weigh in favor of a finding that Appellant was not deprived of his right to a speedy trial.”).

C. Accused’s Assertion of the Right to a Speedy Trial

Unlike the majority, I would find that Petitioner’s assertion of his speedy trial right in November 2004 and January 2005 is not dispositive under the facts of this case. In response to Petitioner’s assertion of the speedy trial right in conjunction with his motions for bail, Petitioner was granted relief under section 17-23-90 in the form of a personal recognizance bond. See State v. Campbell, 277 S.C. 408, 288 S.E.2d 395 (1982) (denying speedy trial claim where section 17-23-90 provides for release if not indicted and' tried within a certain time frame, not dismissal of the charge). Petitioner did not again assert his speedy trial right until his trial in January 2012. At this point Petitioner had been prosecuted in Georgia and incarcerated there for seven years (from January 2005 until January 2012). In my opinion, Petitioner’s failure to assert his right during this time period weighs against him. See Waites, 270 S.C. at 108, 240 S.E.2d at 653 (noting “the manner in which the defendant asserts his right [to a speedy trial] is an important factor to be considered” when analyzing whether a defendant speedy trial motion should be granted, and Barker “ ‘emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.’ ” (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182)); State v. Foster, 260 S.C. 511, 197 S.E.2d 280 (1973) (“The record offers no reason for the failure of the defendants to assert *359 their right sooner, and under [Barker], a failure to assert the right -will make it difficult for the defendants to prove that they were denied a speedy trial”).[10]
Therefore, in my opinion the majority erroneously weighs this factor against the State.

D. Prejudice

Petitioner argues that he was prejudiced by the passage of time because the witnesses’ memories were impaired. The trial court found Petitioner’s right to a fair trial was not impacted by the delay and therefore no prejudice resulted, in that every witness was still available to testify, the prior transcripts were available to Petitioner for impeachment purposes and to refresh the witnesses’ recollections, and in fact Petitioner did “an effective job at pointing out to the witnesses in cross-examining them and impeaching them on prior inconsistent statements.” Significantly, as noted by the court of appeals, Petitioner “did not allege any witnesses or evidence were lost, the delay impacted his case, or an earlier trial would have resulted in a different verdict and sentence.” See Hunsberger, Op. No. 2014-UP-381. However, the majority asserts that the mere passage of time is enough to find prejudice in this case. I disagree. See Pittman, 373 S.C. at 551, 647 S.E.2d at 156 (rejecting Pittman’s argument that a delay of three years, two months between arrest and trial was so lengthy that it was presumptively prejudicial); Foster, 260 S.C. at 515, 197 S.E.2d at 281 (finding a delay of more than five years was sufficient to require analysis of the other factors without finding presumptive prejudice).
*360 This Court has noted that “the most serious interest to be protected by the guarantee to a speedy trial is the possibility of impairment of the defense.” Pittman, 373 S.C. at 550, 647 S.E.2d at 155-56. In Doggett, the United States Supreme Court has also observed that:
Unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including ‘oppressive pretrial incarceration,’ ‘anxiety and concern of the accused,’ and ‘the possibility that the [accused’s] defense will be impaired’ by dimming memories and loss of exculpatory evidence.
505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182). Under the circumstances of this case, where Petitioner was serving a life sentence in Georgia, it is my opinion that the pretrial incarceration and anxiety concerns were minimal.[11] Most, importantly, the delay did not in any way impair his defense. In fact, the delay may have worked to Petitioner’s advantage. The Supreme Court has explained this paradox as follows:
The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern *361 that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused....
[[Image here]]
A second difference between the right to speedy trial and the accused’s other constitutional rights is that deprivation of the right may work to the accused’s advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused’s ability to defend himself.
Barker, 407 U.S. at 521, 92 S.Ct. 2182.
I see two benefits accruing to Petitioner’s defense as a result of the passage of time in this case. First, as the trial judge pointed out, Petitioner was able to cross-examine and impeach the witnesses using their prior testimony. Second, as the court of appeals pointed out, Petitioner “may have received a benefit as a result of the delay because the State ultimately decided not to pursue the death penalty against him.” State v. Hunsberger, Op. No. 2014-UP-381; see State v. Cooper, 386 S.C. 210, 218, 687 S.E.2d 62, 67 (Ct. App. 2009) (noting because the State withdrew its notice to seek the death penalty, “the withdrawal could be construed as a benefit to Cooper resulting from the delay.”). Because I cannot identify any prejudice befalling Petitioner as a result of the delay, I would find the trial court did not abuse its discretion when assessing this factor. See Langford, 400 S.C. at 445, 735 S.E.2d at 484 (finding a two-year delay in bringing the case to trial did not amount to a constitutional violation in the absence of any actual prejudice to the defendant’s case); State v. Brazell, 325 S.C. 65, 76, 480 S.E.2d 64, 70-71 (1997) (noting the three-year-and-five-month delay was negated by the lack of prejudice to the defense); Kennedy, 339 S.C. at 251, 528 S.E.2d at 704 (“While Kennedy may have been slightly prejudiced by the twenty-six month pretrial incarceration, the more impor *362 tant question is whether he was prejudiced because the delay impaired his defense.”).

III. Conclusion

No single Barker factor is “either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.” Barker, 407 U.S. at 533, 92 S.Ct. 2182. Rather, the factors are interrelated and “must be considered along ‘with such other circumstances as may be relevant.’ ” Langford, 400 S.C. at 441, 735 S.E.2d at 482 (quoting Barker, 407 U.S. at 533, 92 S.Ct. 2182). Under this particular constellation of facts, I would hold that the trial court did not abuse its discretion in refusing to dismiss the charges against Petitioner, and consequently, the court of appeals did not err in upholding the trial court’s finding that Petitioner’s speedy trial right was not violated. Accordingly, I would dismiss the writ of certiorari as improvidently granted.
KITTREDGE, J., concurs.

. See S.C. Code Ann. § 17-23-90 (2014) (providing for bail and release from imprisonment should the State fail to prosecute a defendant within a certain time frame).

. Ultimately, the Hunsbergers and Barnes were released to Georgia to stand trial prior to their trials in South Carolina. Barnes received a life sentence in Georgia for crimes related to running a prostitution ring separate from this murder. The Hunsbergers were both convicted of kidnapping in Georgia and received life sentences. Cave, Griffon, and Thatcher all pleaded guilty to aggravated assault in Georgia and re *358 ceived eighteen-year sentences. Barnes and the Hunsbergers were then prosecuted in South Carolina.

, In my opinion, it can be inferred from the record that Petitioner did not, in fact, want a speedy trial. See Barker, 407 U.S. at 536, 92 S.Ct. 2182 (stating, where the defendant did not object to the Commonwealth of Kentucky seeking sixteen separate continuances in his trial date, "barring extraordinary circumstances, we [should] be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." (emphasis added)). Petitioner testified that one of the reasons he did not want to be extradited to South Carolina was that he "needed to find out” how extradition would affect his Georgia appeal. In addition, the record indicates that the State was considering seeking the death penalty against Petitioner, which might explain Petitioner's failure to assert his speedy trial right during his Georgia incarceration.

. In making this finding, the majority claims I ignore the Supreme Court's holding in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). There, the Supreme Court noted that incarceration in another jurisdiction "can have fully as depressive an effect upon a prisoner as upon a person who is at large.” Id. at 378, 89 S.Ct. 575. In my opinion, this case is distinguishable. As one federal court has explained:
Smith involved a prisoner who remained in federal custody for six years during which the State of Texas ignored his repeated requests to be brought to trial on an outstanding state charge. The Supreme Court there rejected the argument propounded by Texas that federalism concerns and respect for equal sovereigns barred it from seeking to try a defendant in federal custody even when that defendant vociferously and repeatedly requested to be tried as quickly as possible. Thus, the Supreme Court, as it made clear in Barker, attaches significant weight in the balance of interests that is dispositive of speedy trial claims to a defendant’s assertion or failure to assert his speedy trial right with respect to an outstanding charge.
United States v. Wade, No. 08-CR-0120 LAK, 2015 WL 4475178, at *3 (S.D.N.Y. July 22, 2015) (footnotes omitted). Here, unlike in Smith, Petitioner never once asserted his speedy trial right while incarcerated in Georgia.